IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| KAMAOLE POINTE DEVELOPMENT LP; ALAKU POINTE LP, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| COUNTY OF MAUI, COUNCIL CHAIR G. RIKI HOKAMA; COUNCIL VICE-CHAIR DANNY A. MATEO; COUNCILMEMBER MICHELLE ANDERSON; COUNCILMEMBER GLADYS COELHO BAISA; COUNCILMEMBER JO ANNE JOHNSON; COUNCILMEMBER BILL KAUAKEA MEDEIROS; COUNCILMEMBER MICHAEL J. MOLINA; COUNCILMEMBER JOSEPH PONTANILLA; COUNCILMEMBER MICHAEL P. VICTORINO; MAYOR CHARMAINE TAVARES; VANESSA A. MEDEIROS, DIRECTOR, MAUI COUNTY DEPARTMENT OF HOUSING AND HUMAN CONCERNS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

CV. NO. 07-00447 DAE-LEK

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DECLARING ORDINANCE 3418 VOID ON ITS FACE UNDER
THE DOCTRINE OF UNCONSTITUTIONAL CONDITIONS; AND ORDER
GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT

On June 2, 2008, the Court heard Plaintiffs' and Defendants'

respective motions for summary judgment.  Robert G. Klein, Esq., Christopher J.

Cole, Esq., and Lisa W. Cataldo, Esq., appeared at the hearing on behalf of

Plaintiffs; Madelyn S. D'Enbeau, Deputy Corporation Counsel, appeared at the

hearing on behalf of County Defendants.  After reviewing the motions and the

supporting and opposing memoranda, the Court DENIES Plaintiffs' Motion for

Partial Summary Judgment Declaring Ordinance 3418 Void on its Face Under the

Doctrine of Unconstitutional Conditions ("Plaintiffs' Motion") (Doc. # 27) and

GRANTS IN PART and DENIES IN PART County Defendants' Motion for

Summary Judgment, or in the Alternative, Partial Summary Judgment ("County

Defendants' Motion") (Doc. # 35).

## BACKGROUND

Plaintiffs Kamaole Pointe Development LP ("KPLP")  and Alaku

Pointe LP ("APLP") (collectively "Plaintiffs") are the owners of TMK Nos. (2) 3-

9-20:10, 11, 12, & 13 ("Parcel One") and (2) 3-9-20:04 ("Parcel Two"), which are

both vacant parcels in the urban district of Kīhei, Maui.  Prior to December 2006,

Plaintiffs and their partners or predecessors-in-interest invested hundreds of

thousands of dollars in architectural, planning, and other professional fees and

expenses towards the development of two multi-family residential projects on both

Parcels One and Two totaling 124 units and 127 units, respectively.

In May 2006, KPLP, through one of its partners, applied for a Special

Management Area permit issued by the Maui Planning Commission per state law

for its Kamaole Pointe project on Parcel One.  At that time, the Maui County

Council (the "Council") was considering a bill for an ordinance imposing a 30%

affordable housing exaction on applicable residential projects.

On or about December 5, 2006, the Council passed Ordinance No.

3418, entitled the "Residential Workforce Housing Policy"(the "Ordinance"), over

Mayor Alan Arakawa's veto.  The Ordinance was adopted in an environment in

which it was widely understood that the price of housing in Maui County had risen

significantly between 1997 and 2006.  The purpose of the Ordinance was to

address the "critical shortage of affordable housing, making home acquisition by

the majority of County resident workers extremely difficult, and creating a

shortage of affordable rental units."  (The Ordinance, Ex. A at 2, attached to Defs.'

Motion.)  The Ordinance requires developers seeking to build five or more

3

residential units on their land to enter into a Residential Workforce Housing

Agreement (the "Agreement") with Maui County's (the "County") Department of

Housing and Human Concerns ("DHHC") before final subdivision approval or

building permits are issued.  The terms of the Agreement are detailed in the

Ordinance.

      The Ordinance requires that: "[w]hen fifty percent or more of the

dwelling units and/or new lots in the development are offered for sale for $600,000

or more, fifty percent of the total number of units and/or lots shall be sold or rented

to residents within the income-qualified groups established by this ordinance."

(The Ordinance at 7.)[1]  In lieu of providing units, the Ordinance provides that the

developer may satisfy the requirement by either: (1) paying an in-lieu fee at the

rate of 30% of the total project sales; (2) donating unimproved land valued at

200% of the in-lieu fee; or (3) donating improved land valued at 100% of the in-

lieu fee, which would be documented in the Agreement between the developer and

the County.  (Id. at 7-11.)  The Ordinance's income-qualified groups are families

with incomes between 100% and 160% of the of the County's median family

---

[1] When more than fifty percent of the dwelling units or new lots in a development are offered for sale for less than $600,000, forty percent of the total units or lots must be sold or rented to residents within the income-qualified groups. (The Ordinance at 7.)

income as set forth by the United States Department of Housing and Urban

Development.[2]  DHHC has no discretion in calculating the applicable sale or rental

requirements of the Ordinance.

A developer of any development subject to the Ordinance may appeal

to the Council for a reduction, adjustment, or waiver of the requirements described

above.  (Id. at 6.)  The developer bears the burden of proving the absence of any

reasonable relationship or nexus between the impact of the development and the

number of residential workforce housing units required.  (Id.)  The Council has

ninety days from the conclusion of the developer's appeal to approve or disapprove

the appeal by resolution, with the presumption that on the ninety-first day the

appeal is deemed approved.  (Id.)

After the Ordinance was enacted, Plaintiffs sought advice from

various professionals regarding its impact on their plans to develop Parcels One

and Two.  Plaintiffs were advised to appeal for a waiver, which they did on

February 23, 2007.  On May 25, 2007, Plaintiffs presented evidence in support of

their appeal and the matter was placed on the Council's agenda.  On July 24, 2007,

the Council's Policy Committee met to consider Plaintiffs' appeal.  On August 21,

2007, the Council rejected Plaintiffs' appeal in Resolution 07-100, finding that

---

[2] In 2008, this includes families earning between $72,800 and $116,400.

there was a reasonable nexus between the impact of Defendants' proposed

developments and the need for affordable housing.  (Resolution 07-100, Ex. 12 at

2, attached to Pls.' Motion.)

On August 23, 2007, Plaintiffs filed their Complaint (Doc. # 1), which

was subsequently amended on September 6, 2007 (the "First Amended Complaint"

or "FAC") (Doc. # 5).  In the FAC, Plaintiffs assert the following claims pursuant

to 42 U.S.C. § 1983: deprivation of constitutional rights (Count 1); the Ordinance,

on its face, effects an impermissible taking (Count 2); the Ordinance, on its face,

violates Plaintiffs' substantive due process and equal protection rights (Count 3);

the Ordinance violates the Hawai`i Constitution (Count 4); and Defendants lacked

authority to enact the Ordinance because imposition of a development exaction for

affordable housing by way of in-lieu fees is not authorized by State statute (Count

5).  Plaintiffs also seek to enjoin enforcement of the Ordinance (Count 6).

On September 25, 2007, County Defendants filed a motion to dismiss

the FAC (Doc. # 10).  On October 5, 2007, Plaintiffs filed a motion to strike the

motion to dismiss (Doc. # 12), which this Court granted on October 26, 2007 (Doc.

# 15).  The Court found that County Defendants' motion did not comply with the

Local Rules.

On February 28, 2008, Plaintiffs filed their motion for partial

summary judgment and, on April 2, 2008, County Defendants filed their motion

for summary judgment.  The parties each filed oppositions on May 15, 2008 (Doc.

## 46 & 47).  On May 22, 2008, the parties filed their respective replies (Doc.

## 53 & 54).

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th

Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A

main purpose of summary judgment is to dispose of factually unsupported claims

and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial has both

the initial burden of production and the ultimate burden of persuasion on a motion

for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d

1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine issue of material fact." <u>Addisu</u>, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. <u>Porter</u>, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. <u>Id.</u> However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

DISCUSSION

## I. <u>Plaintiffs' Motion for Partial Summary Judgment</u>

Plaintiffs mount a facial attack on the Ordinance, claiming that its mere enactment imposes a scheme of excessive and unwarranted exactions in violation of the federal and state constitutions.[3] Plaintiffs also seek an injunction

---

[3] Plaintiffs move only on this limited ground for purposes of the instant motion, expressly reserving their other claims for further factual development.

prohibiting enforcement of the Ordinance.  In support, Plaintiffs allege the following: (1) the Ordinance is an affordable housing "exactions ordinance" reviewable, pursuant to Ninth Circuit precedent, under the "unconstitutional conditions" analytical framework set forth in Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987) and Dolan v. City of Tigard, 512 U.S. 374 (1994); (2) the Ordinance, on its face, imposes an unconstitutional "leveraging" regime of exactions in that: (a) a ban on residential projects cannot rationally advance the County's stated goal of making housing more affordable so as to attract more workers to Maui and to stimulate the economy, and (b) the County had no rational basis to conclude that the exactions imposed are roughly proportional to the impacts of residential projects on affordable housing needs; (3) the appeal/waiver provision does not save the Ordinance from facial invalidity because: (a) the Council's repudiation of the waiver provision proves it is a sham, and (b) the waiver provision inverts the burden of proof imposed by federal law contrary to the Supremacy Clause of the U.S. Constitution; (4) none of the County's defenses has any merit; (5) declaratory and injunctive relief is appropriate to nullify the Ordinance and enjoin further enforcement; and (6) the Ordinance violates similar provisions of the Hawai`i Constitution.

County Defendants respond that (1) this Court does not have jurisdiction to consider an unconstitutional conditions claim based on a taking; (2) the Nollan/Dolan analysis is limited to discretionary permits requiring dedication of property for public use; (3) Plaintiffs' claims are not ripe; (4) the Ordinance is presumptively constitutional; (5) the Ordinance is a valid inclusionary ordinance serving a legitimate government purpose; (6) Plaintiffs made only a pro forma presentation at the waiver hearing before the Council; and (7) Plaintiffs' claim that summary judgment on the Nollan/Dolan analysis is appropriate under the Hawai`i Constitution is baseless.

Plaintiffs claim that this is a case of first impression in this district and, in fact, the country because no government has ever before leaned so heavily on private developers to perform the government's function.  (Pls'. Motion at 1.) The Court, although taking no position on the accuracy of this statement, agrees that the Ordinance and the argument Plaintiffs set forth in condemning it, raise complex, potentially novel issues pertaining to the law of takings.  As stated previously, Plaintiffs urge this Court to apply the heightened Nollan/Dolan standard of review, by way of Commercial Builders of Northern Cal. v. City of Sacramento, 941 F.2d 872 (9th Cir. 1991), cert. denied 504 U.S. 931 (1992), to strike down the Ordinance on its face as a violation of the doctrine of

11

unconstitutional conditions.  In so arguing, Plaintiffs explicitly avoid classifying their challenge as a takings claim,[4] presumably as a strategic decision to avoid certain requirements implicit in such a challenge.  Plaintiffs' argument presents a paradox.  In short, Plaintiffs ask the Court to apply the <u>Nollan</u>/<u>Dolan</u> standard of review, which was specifically recognized by the Supreme Court in <u>Lingle v. Chevron</u>, 544 U.S. 528, 548 (2005) as a takings theory, to a facial attack on the Ordinance that Plaintiffs argue is not a true takings claim.

In their opposition and at the hearing, County Defendants assert that, notwithstanding Plaintiffs' efforts, the instant motion can only be classified as a takings claim.  In light of this debate, the Court finds that, before turning to the merits of Plaintiffs' argument, it must determine two preliminary questions.  First, should the Court construe Plaintiffs' motion as a takings challenge or is the doctrine of unconstitutional conditions, as argued by Plaintiffs, a separate and distinct inquiry?  Second, notwithstanding the answer to the first question, is the <u>Nollan</u>/<u>Dolan</u> standard appropriately extended to a claim such as is raised in Plaintiffs' Motion?  To arrive at appropriately informed answers to these questions, the Court will first conduct an in-depth review of takings law via <u>Lingle</u>, in which

---

[4] In fact, with the exception of footnote four on page 14, Plaintiffs do not even mention the word "takings" in their motion.

the Supreme Court provided a helpful overview of this complex, and frequently

misunderstood area of the law while abrogating a previously available facial

takings test.  The Court will then discuss the special category of land-use exactions

and the cases – <u>Nollan</u> and <u>Dolan</u> – that establish the legal standard for this subset

of takings law.  Next, the Court will briefly examine facial versus as-applied

takings challenges.  Finally, the Court will review relevant Ninth Circuit law

regarding the standards available for mounting facial takings challenges in light of

the Supreme Court's decision in <u>Lingle</u>.

　　　　For the reasons stated below, the Court finds that Plaintiffs' Motion is

a facial takings claim and the application of the <u>Nollan</u>/<u>Dolan</u> standard to such a

challenge is presently not contemplated by Ninth Circuit or Supreme Court case

law.

　　A.　<u>Takings Law Generally</u>

　　　　The Takings Clause of the Fifth Amendment, made applicable to the

states via the Fourteenth Amendment, provides that private property shall not "be

taken for public use, without just compensation."  <u>Lingle</u>, 544 U.S. at 536 (internal

quotations omitted).  As its text makes clear, the Takings Clause does not prohibit

the taking of private property, but instead places a condition on the exercise of that

power.  <u>First English Evangelical Lutheran Church of Glendale v. County of Los</u>

13

Angeles, 482 U.S. 304, 314 (1987).  "In other words, it 'is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking.'" Lingle, 544 U.S. at 536-37 (quoting First English Evangelical, 482 U.S. at 315 (emphasis in original)).  While there are differing scholarly justifications for this regime, the Supreme Court has emphasized its role in "bar[ring] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  Armstrong v. United States, 364 U.S. 40, 49 (1960).

"The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property."  Lingle, 544 U.S. at 537; see, e.g., United States v. Pewee Coal Co., 341 U.S. 114 (1951) (Government's seizure and operation of a coal mine to prevent a national strike of coal miners effected a taking); United States v. General Motors Corp., 323 U.S. 373 (1945) (Government's occupation of private warehouse effected a taking). "Indeed, until the Supreme Court's watershed decision in Pennsylvania Coal Co. v. Mahon, . . . 'it was generally thought that the Takings Clause reached only a direct appropriation of property, or the functional equivalent of a practical ouster of the owner's possession.'" Lingle, 544 U.S. at 537 (quoting Lucas v. South Carolina

14

Coastal Council, 505 U.S. 1003, 1014 (1992) (internal brackets, citations, and emphasis omitted)); see also id., at 1028 n. 15 ("[E]arly constitutional theorists did not believe the Takings Clause embraced regulations of property at all").

Beginning with Pennsylvania Coal, however, the Supreme Court "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster – and that such 'regulatory takings' may be compensable under the Fifth Amendment." Lingle, 544 U.S. at 537.  According to Pennsylvania Coal's "storied but cryptic formulation," while property may be regulated to a certain extent, "'if regulation goes too far it will be recognized as a taking.'"  Id. (quoting Pennsylvania Coal, 260 U.S. at 415).

> The rub, of course, has been – and remains – how to discern how far is 'too far.'  In answering that question, we must remain cognizant that government regulation – by definition – involves the adjustment of rights for the public good, and that Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law[.]

Lingle, 544 U.S. at 538 (internal quotations and citations omitted).

Supreme Court precedent establishes two categories of regulatory action that generally will be deemed per se takings for Fifth Amendment purposes.

Id. First, "where government requires an owner to suffer a permanent physical invasion of her property – however minor – it must provide just compensation." Id. (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982) (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking). Second, a taking occurs when a regulation completely deprives an owner of "'all economically beneficial us[e]' of her property." Id. (quoting Lucas, 505 U.S. at 1019) (emphasis in original)).[5]

Outside these two "relatively narrow categories," and the special context of land-use exactions discussed in the next section, regulatory takings challenges are governed by the standards set forth in Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978). Id. The Court in Penn Central "acknowledged that it had hitherto been unable to develop any set formula for evaluating regulatory takings claims, but identified several factors that have particular significance." Id. (internal quotations and citations omitted). The first of these factors is the economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct

---

[5] The Supreme Court held in Lucas that "the government must pay just compensation for such total regulatory takings, except to the extent that background principles of nuisance and property law independently restrict the owner's intended use of the property." Lingle, 544 U.S. at 538 (citing Lucas, 505 U.S. at 1026-1032) (internal quotations omitted)).

investment-backed expectations.  Id. at 538-39 (internal quotations and citations

omitted).  Second, the character of the governmental action – for instance whether

it amounts to a physical invasion or instead merely affects property interests

through some public program adjusting the benefits and burdens of economic life

to promote the common good – may be relevant in discerning whether a taking has

occurred.  Id. at 539 (internal quotations and citations omitted).  "The Penn Central

factors – though each has given rise to vexing subsidiary questions – have served

as the principal guidelines for resolving regulatory takings claims that do not fall

within the physical takings or Lucas rules."  Id. (internal quotations and citations

omitted).

 According to Lingle, while the Supreme Court's takings jurisprudence

cannot be characterized as unified, "these three inquiries (reflected in Loretto,

Lucas, and Penn Central) share a common touchstone" in that "[e]ach aims to

identify regulatory actions that are functionally equivalent to the classic taking in

which government directly appropriates private property or ousts the owner from

his domain.  Accordingly, each of these tests focuses directly upon the severity of

the burden that government imposes upon private property rights."  Id.  Physical

takings require compensation because of the unparalleled burden they impose.  Id.

"A permanent physical invasion, however minimal the economic cost it entails,

17

eviscerates the owner's right to exclude others from entering and using her property – perhaps the most fundamental of all property interests." Id.; see Dolan, 512 U.S. at 384; Nollan, 483 U.S. at 831-832; Loretto, 458 U.S. at 433; Kaiser Aetna v. United States, 444 U.S. 164, 176 (1979).  In the Lucas context, it is the complete elimination of a property's value that is the determinative factor.  Id.; see Lucas, 505 U.S. at 1017.  The Penn Central inquiry turns in large part, albeit not exclusively, on the "magnitude of a regulation's economic impact and the degree to which it interferes with legitimate property interests."  Id. at 540.

In summary, takings claims can be divided into two main categories: (1) physical takings, whereby the government directly appropriates or physically invades property and, thus, automatically triggers the constitutional requirement of just compensation; and (2) regulatory takings, whereby the value or usefulness of private property is diminished by a regulatory action, potentially actuating the compensation requirement depending on the kind and degree of governmental intrusion.  See, e.g., Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 684 (9th Cir. 1993) (internal citations omitted).  Regulatory taking challenges, in turn, fall within one of the following categories: those alleging a physical invasion (as in Loretto), those alleging a total regulatory taking (as in Lucas), those alleging a Penn Central violation, and, as will be discussed below, those alleging an

unconstitutional land-use exaction based on <u>Nollan</u> and <u>Dolan</u>.  <u>Lingle</u>, 544 U.S. at 548.

   B.  <u>Land-Use Exactions & the Nollan/Dolan Standard</u>[6]

       In Nollan and Dolan, the government used its regulatory power over land use to force an exaction from a permit applicant.  <u>Garneau v. City of Seattle</u>, 147 F.3d 802, 809 (9th Cir. 1998).  In <u>Nollan</u>, the California Coastal Commission forced a couple seeking a building permit to give the public an easement over their beachfront property.  483 U.S. at 831.  In <u>Dolan</u>, the City of Tigard forced a store owner to dedicate a strip of his land for public use.  512 U.S. at 384.  In each case, the Supreme Court began with the premise that, "had the government simply appropriated the easement in question, this would have been a <u>per</u> <u>se</u> physical taking."  <u>Lingle</u>, 544 U.S. at 546 (citing <u>Dolan</u> at 384 and <u>Nollan</u> at 831-32).  The question was whether the government could, without paying the compensation that would otherwise be required upon effecting such a taking,

> demand the easement as a condition for granting a
> development permit the government was entitled to deny.
> The Court in <u>Nollan</u> answered in the affirmative,
> provided that the exaction would substantially advance

_____

   [6] For a definitive analysis of takings law, <u>see</u> David L. Callies & Christopher T. Goodin, <u>The Status of Nollan v. California Coastal Commission and Dolan v. City of Tigard After Lingle v. Chevron U.S.A., Inc.</u>, 40 J. MARSHALL L. REV. 539 (2007).

> the same government interest that would furnish a valid
> ground for denial of the permit.  The Court further
> refined this requirement in <u>Dolan</u>, holding that an
> adjudicative exaction requiring dedication of private
> property must also be roughly proportional both in nature
> and extent to the impact of the proposed development.

<u>Id.</u> at 546-47 (internal quotations and citations omitted).  In both cases, the

Supreme Court found the government's use of its police power illegitimate.

<u>Garneau</u>, 147 F.3d at 809.  "Stripped of its legitimacy, government imposition of

the exactions were found to constitute takings . . . ."  <u>Id.</u>

Read together, <u>Nollan</u> and <u>Dolan</u> establish a three part test.  <u>Id.</u>  First,

the court asks "whether government imposition of the exaction would constitute a

taking."  <u>Id.</u>  This inquiry ignores the government's land use power and asks only

whether government imposition of the exaction would be a taking.  <u>Id.</u>  "The

exaction is the concession sought by the government, or the condition upon which

granting the permit depends."  <u>Id.</u>  Second is the "'essential nexus' test, which asks

whether the government has a legitimate purpose in demanding the exaction."  <u>Id.</u>

Third is the "rough proportionality" test, "which asks whether the exaction

demanded is roughly proportional to the government's legitimate interests."  <u>Id.</u>

The second and third inquiries therefore seek to determine whether the

government may shield itself from a takings claim through the use of its police

powers.  Id. at 810.  In Nollan, the Court framed the second question by asking:

"Given, then, that requiring uncompensated conveyance of the easement outright

would violate the Fourteenth Amendment, the question then becomes whether

requiring it to be conveyed as a condition for issuing a land-use permit alters the

outcome."  483 U.S. at 834.  This essential nexus test compares the government's

purpose in seeking the concession with its legitimate land use interests.  Garneau,

147 F.3d at 810.  "If the government's purposes are not connected, then the

government's demand for the exaction is not a legitimate exercise of its police

power, but an out-and-out plan of extortion."  Id. (internal quotations and citations

omitted).  The third inquiry is merely a refinement of the second, and asks whether

the governmental entity imposing the exaction has made "some sort of

individualized determination that the required dedication is related both in nature

and extend to the impact of the proposed development."  Id. (quoting Dolan, 512

U.S. at 391).

    With this background in place, the Court returns to the first inquiry

here: whether Plaintiffs' unconstitutional conditions challenge is in actuality a

takings claim.  As a first step, the Court examines the plain language of Plaintiffs'

Motion for guidance.  While Plaintiffs primarily base their arguments on the

premise that the Ordinance impermissibly fails to satisfy the essential nexus and

rough proportionality requirements of <u>Nollan</u>/<u>Dolan</u>, the underlying basis of

Plaintiffs' Motion is clear – the Ordinance renders Plaintiffs' two proposed

developments so cost-prohibitive as to render them totally infeasible. (<u>See</u> Pls.'

Motion at 7.)  In light of the background on takings law provided above, such an

argument is undeniably a regulatory takings claim at its core.  Furthermore, despite

endeavoring not to classify their claim as a taking, Plaintiffs reveal much in the

footnote utilizing the term.[7]  The Court finds that this footnote accurately

encapsulates Plaintiffs' instant claim.  It reads:

> The exactions imposed by the Ordinance, on their face,
> constitute <u>classic</u> <u>takings</u> sufficient to satisfy the
> threshold requirement in <u>Nollan</u>.  Although the
> Ordinance gives a developer 'options,' each would be a
> <u>taking</u> of private property in its own right if compelled:
> (1) conveyance of land; (2) paying an in-lieu fee at 30%
> of the project sales; (3) forcing the landowner to dedicate
> units as low income rentals in perpetuity; or (4) forcing
> the landowner to sell units to buyers selected by lottery at
> sub-market prices.

---

[7] In their opposition to County Defendants' motion for summary judgment, on the other hand, Plaintiffs explicitly argue that an unconstitutional conditions claim is not coterminous with a takings claim.  Plaintiffs assert that <u>Nollan</u> and <u>Dolan</u> "are not true 'takings' claims" in that they require government to show that a nexus exists, and to prove the proportionality of the burden imposed, before it may use a permit condition as a "shorter cut than the constitutional way of paying for the change."  (Pls.' Mot. in Opp'n at 15-16 (internal quotations and citations omitted).)  For the reasons stated here, the Court is similarly unpersuaded by this argument.

(Pls.' Motion at 14 n. 4 (internal citations and quotations omitted and emphasis added).)  Despite Plaintiffs' attempts to distance themselves from this language throughout the remainder of the Motion and in their subsequent opposition to County Defendants' Motion, the instant claim, no matter how framed, is appropriately construed as a takings claim.

This result is buttressed by Lingle, which, as discussed above, sets fourth four distinguishable grounds for mounting a challenge to a government regulation as an uncompensated taking of private property: (1) by alleging a "physical" taking per Loretto; (2) by alleging a Lucas-type "total regulatory taking;" (3) by alleging a Penn Central taking; or (4) by alleging a land-use exaction violating the standards set forth in Nollan and Dolan.[8]  Lingle, 544 U.S. at

_____

[8] Commentators have expressed reservation with Lingle's classification of Nollan/Dolan as an independent category of takings claims.  The exactions problem, they argue, cannot stand alone, as the genesis of both Nollan and Dolan was an affirmative defense to a per se physical takings claim.  See, e.g., JULIAN CONRAD JUERGENSMEYER & THOMAS E. ROBERTS, LAND USE PLANNING AND DEVELOPMENT REGULATION LAW 597 (2d ed. 2007).  The Lingle Court "noted that in both cases the Court began with the premise that, had the government simply appropriated the easement in question, this would have been a per se physical taking.  The physical invasion is the taking, but the government's justification, if it meets the Nollan nexus, excuses the government from paying compensation."  Id. (internal quotations omitted).  The Nollan/Dolan formula, therefore, is more appropriately classified as an exception to the Loretto test.  Id.
    Regardless of whether the Nollan/Dolan formula is an independent category of takings claim or is considered an exception to the Loretto test, this

(continued...)

538.  Clearly, <u>Lingle</u> contemplates the <u>Nollan</u>/<u>Dolan</u> formula within the ambit of takings law and gives no indication that it applies outside of this context.

The Court also finds significant the fact that both <u>Nollan</u> and <u>Dolan</u> stemmed from a government's demand for a public easement across private property in exchange for a building permit.  In other words, <u>Nollan</u> and <u>Dolan</u> are premised upon physical invasion of property.  As discussed above, the Court determined in each case that, had the government merely appropriated the easement, there would have been a <u>per se</u> physical taking.  <u>Id.</u> at 546.  Accordingly, the first inquiry under the <u>Nollan</u>/<u>Dolan</u> standard is whether the government's exaction effects a taking.  <u>Garneau</u>, 147 F.3d at 809.  The essential nexus and rough proportionality inquiries address whether the government can, without paying the compensation that would normally be required upon effecting such a taking, demand the easement as a condition for granting the permit that the government was entitled to deny.  <u>Lingle</u>, 544 U.S. at 547.  In light of this formulation, it is clear that <u>Nollan</u>/<u>Dolan</u> cannot exist outside of the takings sphere. The test was created to determine whether a leveraged government exaction that would constitute an uncompensated physical invasion of private property and, thus,

---

[8](...continued)
Court's central determination is not altered: <u>Nollan</u>/<u>Dolan</u> is a takings test.

a taking, could pass constitutional muster under the appropriate conditions.  In

answering "yes," the Supreme Court firmly established <u>Nollan</u>/<u>Dolan</u> as a test

applicable to takings challenges in the land-use exactions context.

   Moreover, Plaintiffs' primary argument in support of their attempt to

extend <u>Nollan</u>/<u>Dolan</u> is unpersuasive.  Plaintiffs contend that <u>Commercial Builders</u>,

decided after <u>Nollan</u> but before <u>Dolan</u>, establishes that, where there is no evidence

of a nexus between the development and the problem that the exaction seeks to

address, the exaction cannot be upheld.  941 F.2d at 875.  According to Plaintiffs,

<u>Commercial Builders</u> upheld the affordable housing exaction at issue there because

the record indicated that the ordinance was implemented only after a detailed

study.  To be constitutional pursuant to <u>Nollan</u>, Plaintiffs contend, the government

must demonstrate that the exaction imposed as a permit condition serves the same

governmental purpose as would be served by denying the permit altogether.  As no

studies were done in the instant matter, the argument goes, the Ordinance cannot

satisfy <u>Nollan's</u> requisite "substantial nexus" and is, therefore, facially void.

   The Court notes that Plaintiffs' reliance on a 1991 Ninth Circuit case

decided <u>before</u> one of the two Supreme Court cases establishing the legal principle

underlying their principal argument is problematic.  Much has changed in takings

law since <u>Commercial Builders</u> was issued; specifically, for these purposes, the

Supreme Court's decisions in <u>Dolan</u>, <u>Lucas</u>, and <u>Lingle</u>.  Moreover, the Ninth

Circuit has itself issued numerous rulings – among them <u>Levald</u>, <u>Garneau</u>, and

<u>Spoklie</u>, 411 F.3d 1051 (9th Cir. 2005) – that have expanded upon and clarified the

legal standards applicable to challenges of ordinances such as the one here.

<u>Commercial Builders</u> is undoubtedly attractive to Plaintiffs because of its

somewhat analogous facts.  The case, however, gives no explicit indication that it

stands for the proposition that there exists a <u>Nollan</u>/<u>Dolan</u>-based challenge outside

of the takings context.  In light of subsequent case law discussed above, the Court

is unpersuaded that <u>Commercial Builders</u> is instructive here.

Based on this discussion, it is clear that Plaintiffs' unconstitutional

conditions argument, relying as it does on <u>Nollan</u>/<u>Dolan</u>, can only be classified as a

takings challenge.

C.  <u>Facial v. As-applied Takings Challenges</u>

In addition to division into physical occupation and regulatory

takings, takings claims are divided into "facial" and "as-applied" challenges.

<u>Levald</u>, 998 F.2d at 686.  "A facial challenge involves 'a claim that the mere

enactment of a statute constitutes a taking,' while an as-applied challenge involves

'a claim that the particular impact of a government action on a specific piece of

property requires the payment of just compensation.'"  <u>Id.</u> (quoting <u>Keystone</u>

26

Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 494 (1987)).  As the

Keystone Court noted, there is an important distinction between the two types of

claims.  Id.  Among other things, each raises different ripeness and statute of

limitations issues.[9]  Id.

      In facial takings claims, the inquiry is limited to whether "mere

enactment" of the regulation has gone too far.  Garneau, 147 F.3d at 807.  The

Supreme Court has recognized that "facial takings challenges 'face an uphill battle

since it is difficult to demonstrate that mere enactment of a piece of legislation

deprived the owner of a economically viable use of his property."  Id. (quoting

Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 736 n. 10 (1997)).  In a

facial challenge, a court will look only to the regulation's "'general scope and

dominant features, leaving other specific provisions to be dealt with as cases arise

directly involving them.'"  Id. (citing Village of Euclid v. Amber Realty Co., 272

U.S. 365, 397 (1926) (internal quotations and punctuation omitted)).

      Plaintiffs do not disguise the facial nature of their challenge here.

Plaintiffs repeatedly contend that the Ordinance is invalid on its face.  (See, e.g.,

Pls.' Motion at 2 ("Plaintiffs seek an order declaring the Ordinance void on its

---

    [9] As these issues are not germane to the instant discussion, the Court will not
address them here.  The Court does, however, address the ripeness issue in depth in
Section II.A below.

face."); Pls.' Motion at 17 ("Failing even to have a nexus, the Ordinance, on its face, cannot possibly pass the 'rough proportionality' test set out in <u>Dolan</u>.))  As such, and in light of the Court's previous determination that Plaintiffs' unconstitutional conditions claim raises a takings issue, the instant Motion must be considered a facial takings claim.

    D.  <u>Standards Applicable to Facial Takings Claims</u>

        Generally, a federal takings claim is not ripe until a litigant has: (1) obtained the final position of the government on its development (the "final decision requirement"), and (2) sought compensation through the procedures the state has provided for doing so (the "state compensation requirement").[10] <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172, 186-87, 194 (1985).  "Facial challenges are exempt from the first prong of the <u>Williamson</u> [County] ripeness analysis because a facial challenge by its nature does not involve a decision applying the statute or regulation." <u>Yee v. City of Escondido</u>, 503 U.S. 519, 534 (1992).  The state compensation requirement, however, applies to facial as well as to as-applied challenges.  <u>Southern Pac.</u>

_____

[10] Presumably, avoidance of <u>Williamson County's</u> ripeness requirements was the primary reason behind Plaintiffs' efforts not to classifying their Motion as a takings claim. As noted in the previous footnote, the Court undertakes a far more thorough examination of ripeness in Section II below.

Transp. Co. v. City of Los Angeles, 922 F.2d 498, 505-06 (9th Cir. 1990) ("[A]

claim alleging that mere enactment of a statute effects an unconstitutional taking is

unripe unless and until it is known what, if any, compensation is available.")

Moreover, the appropriate point for determining the adequacy of state

compensation procedures is at the time the alleged taking occurred. Sinaloa Lake

Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1402 (9th Cir. 1989)

overruled on other grounds by Armendariz v. Penman, 75 F.3d 1311 (9th Cir.

1996) (overruling Sinaloa to the extent that it stands for the proposition that a

plaintiff may bring a substantive due process claim whenever his other claims are

unsuccessful).

        Significant to the instant discussion, the Ninth Circuit has held that

one aspect of a facial takings claim is exempt from Williamson County's state

compensation requirement. Spoklie, 411 F.3d 1057.  In Sinclair Oil Corp. v.

County of Santa Barbara, 96 F.3d 401 (9th Cir. 1996), the Ninth Circuit held that a

plaintiff could bring a facial takings claim under one of two theories. "Either a

plaintiff could show that the challenged land use restriction deprived him of all

economically viable use of his land, or he could show that the action did not

substantially advance a legitimate state interest." Spoklie, 411 F.3d at 1057 (citing

Sinclair Oil, 96 F.3d at 406-07) (internal quotations omitted)).  The first showing

29

(premised on <u>Lucas</u>) requires the plaintiff to comply with <u>Williamson County's</u> state compensation criterion but the second, known as the "substantially advances" test, does not. <u>Id.</u> Thus, where, as here, a plaintiff brings what amounts to be a facial takings claim in federal court without first seeking compensatory remedies through state court, the only means of proceeding, according to <u>Spoklie</u>, is via the "substantially advances" inquiry. This theory, however, was explicitly abrogated by <u>Lingle</u>.

The <u>Lingle</u> Court held that the "substantially advances" formula, first announced in <u>Agins v. City of Tiburon</u>, 447 U.S. 255 (1980), "is not a valid method of identifying regulatory takings for which the Fifth Amendment requires just compensation." <u>Id.</u> at 545. In <u>Agins</u>, a case involving a facial takings challenge to municipal zoning ordinances, the Court declared that "[t]he application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests [] or denies an owner economically viable use of his land []." 447 U.S. at 260 (internal citations omitted). "Because this statement is phrased in the disjunctive, <u>Agins'</u> 'substantially advances' language has been read to announce a stand-alone regulatory takings test that is wholly independent of <u>Penn Central</u> or any other test." <u>Lingle</u>, 544 U.S. at 540. The Court found, however, that the "substantially

30

advances" formula prescribes an inquiry in the nature of a due process, not a takings test and, thus, has "no proper place in [] takings jurisprudence." Id.

As a basis for this holding, the Court determined that the "substantially advances" test: (1) was derived from due process precedents such as Nectow v. Cambridge, 277 U.S. 183 (1928)[11] and Euclid;[12] (2) suggests a means-ends test that is not a valid means of discerning whether private property has been taken for purposes of the Fifth Amendment; (3) reveals nothing about the magnitude or character of the burden a particular regulation imposes upon private property rights and does not provide and information about how any regulatory burden is distributed among property owners; (4) as a consequence, it does not help to identify those regulations whose effects are functionally comparable to government appropriation or invasion of private property; (5) probes a challenged regulation's underlying validity instead of addressing its effect on private property, an inquiry that is logically prior to and distinct from the question of whether a

---

[11] Nectow considered a challenge by a plaintiff that a city zoning ordinance deprived him of his property without due process of law in contravention of the Fourteenth Amendment.  277 U.S. at 185.

[12] Euclid held that a municipal zoning ordinance would survive a substantive due process challenge so long as it was not "clearly arbitrary and unreasonable, having no substantial relation to the public, health, safety, morals, or general welfare."  272 U.S. at 395.

regulation effects a taking because the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose; (6) presents serious practical difficulties in that it can be read to demand heightened means-end review of virtually any regulation of private property; and (7) would empower, and sometimes require, courts to substitute their predictive judgments for those of elected legislatures and expert agencies.  Lingle, 544 U.S. at 540-44.

In abrogating the "substantially advances" formula for takings purposes, the Court emphasized that it was not disturbing any of its prior holdings.  Id. at 545.  The test was applied in Agins itself and, arguably, in Keystone, 480 U.S. at 485-492 (quoting "substantially advances" language and then finding that the challenged statute was intended to further a substantial government interest), but, the Court reasoned, in no case did it find "a compensable taking based on such an inquiry."  Id. at 546.  Moreover, and particularly relevant to the inquiry here, the Court clarified that, while the formula might be seen as playing a role in the Nollan and Dolan decisions due to the use of similar language, neither of these cases can be read as applying the "substantially advances" test.  Id.

As discussed above, Nollan and Dolan involved Fifth Amendment takings challenges to adjudicative land-use exactions – specifically, government demands that a landowner dedicate an easement allowing public access to her

32

property as a condition of obtaining a development permit.  Id. (internal citations

omitted).  Although these cases quoted Agins' language, Nollan and Dolan

established a rule distinct from the "substantially advances" test.  Id.  Whereas the

"substantially advances" inquiry is unconcerned with the degree or type of burden

a regulation places upon property, Nollan and Dolan both involved dedications of

property "so onerous that, outside the exactions context, they would be deemed per

se physical takings."  Id. (citing Dolan, 512 U.S. at 387-88; Nollan, 483 U.S. at

841).

   The Lingle Court found that in neither case did the Court question

whether the exaction would substantially advance some legitimate state interest.

Id.  Rather, the issue was whether the exactions substantially advanced the same

interests that land-use authorities asserted would allow them to deny the permit

altogether.  Id.  As the Court explained,

> these cases involve a special application of the doctrine
> of unconstitutional conditions, which provides that the
> government may not require a person to give up a
> constitutional right – here the right to receive just
> compensation when property is taken for a public use –
> in exchange for a discretionary benefit conferred by the
> government where the benefit has little or no relationship
> to the property.  That is worlds apart from a rule that says
> a regulation affecting property constitutes a taking on its
> face solely because it does not substantially advance a
> legitimate government interest.  In short, Nollan and

> Dolan cannot be characterized as applying the
> 'substantially advances' test we address today, and our
> decision should not be read to disturb these precedents.

Id. at 547-48 (internal quotations and citations omitted).

Based on the foregoing, it is this Court's determination that, by

abrogating the "substantially advances" test for takings claims, the Supreme Court

effectively eliminated the only means of raising a facial takings claim not subject

to Williamson County's state compensation requirement.  The Ninth Circuit's

holdings in Sinclair Oil and Spoklie make clear that, of the two types of facial

takings claims previously available to plaintiffs, only the "substantially advances"

theory escaped this criteria's reach.  See Spoklie, 411 F.3d at 1057; Sinclair Oil, 96

F.3d at 407.  As this test is no longer viable per Lingle, it logically follows that the

other formulation explicitly recognized by the Ninth Circuit as viable for facial

takings claims – i.e., a Lucas-style attack – is now the only means available for

mounting such a challenge.  As already established, a plaintiff must first seek

compensation at the state level when pursuing such a challenge.

Here, while not explicitly arguing as much, Plaintiffs ask this Court to

extend the Nollan/Dolan standard to what amounts to a facial takings claim,

notwithstanding the state compensation requirement imposed by Williamson

County.  It is clear why Plaintiffs would so argue – as it stands now, the only

34

remedy available in this Circuit to a plaintiff mounting a facial challenge to a regulatory taking is via a <u>Lucas</u>-style attack brought after the pursuit of compensation in state court.  Such a limited remedy carries with it obvious negative repercussions for a plaintiff.  These include, among others, (1) the length of time required to  pursue such a claim in state and then federal court, (2) for some plaintiffs, the desirability of the federal forum, and (3) <u>res judicata</u> concerns.

Furthermore, as discussed above, Plaintiffs do not assert a physical invasion of their property, rendering <u>Nollan</u> and <u>Dolan</u> inapposite.  As reinforced throughout their Motion, Plaintiffs argue that the exactions imposed by the Ordinance, which in their view possess neither a nexus nor rough proportionality to the stated goal of increasing affordable housing, have stymied their projects so that proceeding with the developments is financially infeasible.  The essential nexus and rough proportionality inquiries address whether the government can, without paying the compensation that would normally be required upon effecting a taking, demand an easement as a condition for granting a permit that the government was entitled to deny.  <u>Lingle</u>, 544 U.S. at 547.  Where, as here, there is no proposed physical invasion of Plaintiffs' land, there is no underlying basis for applying <u>Nollan</u> and <u>Dolan</u>, at least for purposes of a facial challenge.  While inventive, Plaintiffs' unconstitutional conditions argument essentially asks this Court to

extend <u>Nollan</u> and <u>Dolan</u> beyond the scope provided them by the Supreme Court and the Ninth Circuit.  This Court is not empowered to undertake such a drastic expansion of the law.

This conclusion is reinforced by <u>Garneau</u>, decided before <u>Lingle</u>, and <u>Spoklie</u>, decided after <u>Lingle</u>.  In <u>Garneau</u>, the Ninth Circuit explicitly held that the <u>Dolan</u> analysis does not apply in facial takings claims because, fundamentally, <u>Dolan</u> is meant to determine whether the exaction is too costly, not whether it constitutes a facial taking.  147 F.3d at 811.  Moreover, in <u>Spoklie</u>, the Ninth Circuit held that, to the extent that the plaintiff's takings claim was premised upon the "substantially advances" test, <u>Lingle</u> requires that the claim be dismissed with prejudice.  411 U.S. at 1058.  In other words, with <u>Lingle</u> entrenched as the Supreme Court's most current statement on takings law, the Ninth Circuit declined to recognize or suggest an alternative test beyond that which was abrogated by the Supreme Court mere months before.  Just as the Ninth Circuit declined, so too does this Court.

To review, this Court hereby determines that: (1) despite its reliance on the allegedly distinct doctrine of unconstitutional conditions, Plaintiffs' Motion is appropriately construed as a facial takings claim; (2) generally, <u>Williamson County's</u> ripeness requirements apply to facial takings claims; (3) the Ninth Circuit

previously recognized the "substantially advances" test as the only means of mounting a facial takings challenge free from <u>Williamson County's</u> state compensation requirement; (4) the Supreme Court abrogated "substantially advances" as a takings test in <u>Lingle</u>; (5) the <u>Nollan</u>/<u>Dolan</u> standard has not been extended by the Supreme Court or the Ninth Circuit to apply outside of the facial takings claims realm; and, (6) as a result, to the extent that Plaintiffs raise a facial taking claim here, whether based on the federal or State Constitution, Plaintiffs must first seek compensation via State court.  The Court therefore DENIES Plaintiffs' instant Motion.

II.  <u>County Defendants' Motion</u>

County Defendants contend that they are entitled to summary judgment or, in the alternative, partial summary judgment because: (1) the Ordinance is a valid inclusionary ordinance; (2) Plaintiffs' claims are not ripe; (3) the Ordinance is presumptively constitutional; (4) 42 U.S.C. § 1983 does not create any substantive rights; (5) Plaintiffs' unconstitutional conditions claim is a takings claim and, therefore, must be brought in State court first; (6) the Ordinance is a generally applicable law that does not violate Plaintiffs' equal protection rights; (7) the Ordinance does not involve egregious government conduct and does not, as a result, violate Plaintiffs' substantive due process rights; (8) if this Court determines

that it has jurisdiction, Plaintiffs' State constitutional claims should be certified to

the Hawai`i Supreme Court because of a paucity of relevant law as to whether a

legislative act, on its face, can constitute an unlawful taking under the State

Constitution; (9) the Ordinance does not conflict nor is it preempted by Hawai`i

Revised Statutes ("HRS") §§ 46-141 to 46-148; and (10) Plaintiffs' claims against

the individually named Defendants are duplicative and should be dismissed.

      In opposition, Plaintiffs assert that: (1) the doctrine of unconstitutional

conditions recognized in <u>Nollan</u> and <u>Dolan</u> affords relief to citizens aggrieved by

an exaction ordinance like the one here; (2) invalidation of the Ordinance or an

injunction against its enforcement are the proper remedies to address County

Defendants' unconstitutional imposition of exactions; (3) the alleged absence of

"vested rights" does not render any of Plaintiffs' claims non-actionable; (4) the

lawsuit is ripe; (5) on the merits, the Ordinance violates the doctrine of

unconstitutional conditions; (6) the Ordinance, on its face or as-applied by County

Defendants, violates Plaintiffs' due process rights; (7) Plaintiffs' equal protection

claims are actionable; (8) Plaintiffs' State law claims are actionable; and (9) the

Ordinance obliterated Plaintiffs' property values and thereby effectuated a taking

of Plaintiffs' property.

Before proceeding with its analysis, the Court first addresses County Defendants' first, third, fourth, and fifth arguments because they fail to advance, in any way discernible to this Court, County Defendants' Motion.

In support of their first argument that the Ordinance is a valid inclusionary ordinance, County Defendants offer three sub-arguments: (a) the Ordinance is not a low income housing ordinance; (b) the Ordinance addresses gap group housing needs, which is a valid governmental purpose; and (c) inclusionary housing programs nationwide reflect the Ordinance's viability. Regardless of how the Ordinance is labeled, what needs it supposedly addresses, and what other jurisdictions have to say about allegedly similar laws, this Court must determine whether this Ordinance survives the constitutional challenge it faces here. None of these criteria have any bearing on the immediate issue and, thus, are irrelevant to the question of whether there remains a genuine issue of material fact.

County Defendants' third argument – that the Ordinance is presumptively constitutional – even if true, similarly fails to advance County Defendants' request for summary judgment. While County Defendants are correct that when the validity of a statute is being challenged there must be a showing that no set of circumstances exist under which the statute would be valid, Comm. of Dental Amalgam Mfrs. and Distrib. v. Stratton, 92 F.3d 807 (9th Cir. 1996), this

39

proposition says nothing about this Ordinance's ability to withstand the specific constitutional challenges brought by Plaintiffs here.  In fact, if Plaintiffs are successful on any of their constitutional claims, there can be no set of circumstances under which the Ordinance is valid.  County Defendants' contention that other developers' compliance or expressed willingness to comply with the Ordinance means that there are not only conceivable, but actual, situations under which the Ordinance does not obliterate property values as alleged in the FAC is similarly irrelevant.  A third party's acquiescence or decision not to challenge a law does not somehow insulate that law from legal challenges by others.

In their fourth argument, County Defendants argue that 42 U.S.C. § 1983 does not create any substantive rights but merely provides a method for vindicating federal rights elsewhere conferred.  Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979).  While County Defendants' statement of the law is correct, it is not clear to the Court, as County Defendants propound, that Plaintiffs "seek a declaration that the . . . Ordinance violates § 1983."  (County Defs.' Motion at 16.) County Defendants apparently interpret Count 1 of the FAC, which alleges that County Defendants' actions, official policy, and course of conduct have deprived Plaintiffs of rights, privileges, and immunities secured by the Constitution in violation of § 1983, to mean that Plaintiffs construe these rights to be provided by

§ 1983.  The Court's careful reading of the FAC indicates otherwise, as Plaintiffs make explicit on numerous occasions the specific constitutional violations that they allege are violated by the Ordinance.  This argument is, therefore, irrelevant.

As to County Defendants' fifth argument – that Plaintiffs' unconstitutional conditions claim is actually a takings claim – this Court has already ruled in congruence with County Defendants on this issue, thus rendering this argument moot.

The Court now turns to County Defendants' remaining arguments.

A.  Ripeness

In support of their argument that none of Plaintiffs' claims are ripe, County Defendants aver that (1) Plaintiffs' only raise takings claims, and (2) Plaintiffs have not satisfied Williamson County's final decision or state compensation requirements.  Specifically, with regard to the final decision requirement, County Defendants argue that the subsequent amendment of the Ordinance by Ordinance 3512, effective January 26, 2008, means that Plaintiffs have not obtained a final decision regarding the application of the disputed regulations to the property in this matter.  With regard to the state compensation criteria, County Defendants assert that a regulatory takings claim must first be filed as an inverse condemnation action in state court, which Plaintiffs have failed to do

here.  County Defendants further argue that <u>Lingle's</u> abrogation of the "substantially advances" test essentially means that a facial takings claim is no longer impervious to a ripeness analysis.  Finally, County Defendants contend that a claim with respect to a property right is not ripe until the property right has vested.

Plaintiffs respond that their lawsuit is ripe because the heart of their claims is that the County did not have the power to enact the Ordinance.  Plaintiffs again allege that their chief complaint is not that the Ordinance has effectuated a taking of their property but, rather, that the Ordinance has stymied their projects by imposing invalid conditions that do not have the requisite "nexus" and "rough proportionality."  Moreover, Plaintiffs contend that they have satisfied the first <u>Williamson County</u> ripeness requirement in that their appeal to the Council was denied in a final decision.  The second requirement, Plaintiffs aver, does not apply to their non-takings claims.

To briefly review, in <u>Williamson County</u> the Supreme Court placed "two hurdles in the way of a taking claim brought in federal court against states and their political subdivisions."  <u>Sinaloa</u>, 882 F.2d at 1402.  First, a plaintiff must obtain a final decision regarding the application of the regulation to the property at issue before the government entity charged with its implementation. <u>Williamson</u>

42

County, 473 U.S. at 186.  This final decision requirement is only germane to as-applied challenges and not to facial challenges.  Yee, 503 U.S. at 534.  Second, a plaintiff must seek compensation through the procedures provided by the state before turning to the federal courts.  Williamson County, 473 U.S. at 194.  This requirement applies to all takings claims.  Southern Pacific, 922 F.2d at 505-06.

In the FAC, Plaintiffs raise numerous challenges to the Ordinance, primary of which is their unconstitutional conditions claim.  As established in Section I, this claim is more appropriately construed as a facial takings claim and, as a result of Lingle's abrogation of the "substantially advances" theory, may only be brought after Williamson County's state compensation requirement is fulfilled. Plaintiffs' other claims, which they expressly reserved in their Motion but which County Defendants attack here, include facial and as-applied takings claims, among others.  As to the facial claims, Plaintiffs argue here that Williamson County does not apply in full, if at all to facial attacks and cites as authority Suitum, 520 U.S. at 736 n. 10 ("Such 'facial' [takings] challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed . . . .") Notwithstanding the fact that Plaintiffs omit the latter half of this footnote's text, which reads ". . . but face an uphill battle[,]" id., Plaintiffs' argument is uncompelling.  For this proposition of general ripeness, Suitum relies on Agins,

43

which as established previously, is no longer valid law to the extent of its reliance on the "substantially advances" test.

As to Plaintiffs' as-applied takings claims, they too are unripe. While the parties dispute whether the final decision requirement has been met here, the Court need not decide this issue at this juncture. For as-applied challenges, a plaintiff must fulfill both of <u>Williamson County's</u> requirements. <u>Sinclair Oil</u>, 96 F.3d at 405. The fact that Plaintiffs indisputably have not sought compensation in State court proves immediately fatal to all their takings claims for purposes of this Motion.

Thus, to the extent that Plaintiffs explicitly bring takings claims or claims that are in fact takings claims (as in the case of their unconstitutional conditions argument), this Court GRANTS County Defendants' Motion for Summary Judgment as none of these claims are ripe.[13]  Because, however, these claims are subject to further development in State court, at which point they could conceivably be ripe, the Court DISMISSES these claims WITHOUT PREJUDICE. Plaintiffs' remaining claims, including those for violations of due process and equal protection to be discussed next, are undisturbed by this ruling.

_____

[13] Accordingly, this Court does not address County Defendants' ripeness argument predicated upon Plaintiffs' lack of vested rights.

B.  Equal Protection

County Defendants assert that Plaintiffs' equal protection claim fails because Plaintiffs cannot establish that they are members of a protected class and, as a result, the Ordinance is reviewable under the rational relation standard. Plaintiffs do not allege a racially discriminatory intent, nor that the Ordinance is pretextual, thus leading to the conclusion that the Ordinance is not malicious, irrational, or plainly arbitrary.  County Defendants further contend that Plaintiffs' equal protection claim fails under a "class of one" review because the Ordinance applies equally to all developers who fall within its minimum development categories and Plaintiffs cannot establish that they are being treated differently from those similarly situated.

Plaintiffs argue in opposition that they do not purport to be members of a suspect class and do not seek review of the Ordinance under the strict scrutiny standard.  Rather, Plaintiffs assert that the Ordinance's distinctions, at least as applied to Plaintiffs and those in their class, are arbitrary and, thus, fail even rational relation review.  Specifically, Plaintiffs contend that the Ordinance evinces the County's irrational bias against residential developers, especially as applied to Plaintiffs and others like them who do not contribute to the affordable housing problem on Maui.  Plaintiffs also allege that a class need not be suspect or quasi-

45

suspect to be entitled to equal protection of the laws.  Finally, Plaintiffs aver

County Defendants are mistaken in alleging that they are pursuing a "class of one"

claim because Plaintiffs allege in the FAC that they, and others in the same class

(i.e. residential developers of five or more units), are being irrationally singled out.

  For the reasons stated below, the Court finds that Plaintiffs' equal

protection claim is twofold and consists of: (1) a general argument that the

Ordinance is arbitrary and irrational, and (2) a "class of one" argument that

Plaintiffs were intentionally, and without rational basis, treated differently from

others similarly situated during their appeal for a waiver.  On neither of these

arguments is summary judgment warranted.

  The Equal Protection Clause of the Fourteenth Amendment

commands that no state shall deny to any person within its jurisdiction the equal

protection of the laws.  Most laws distinguish in some fashion between classes of

persons, and the equal protection clause does not forbid classifications.  Nordlinger

v. Hahn, 505 U.S. 1, 10 (1992).  Rather, the clause "keeps governmental

decisionmakers from treating differently persons who are in all relevant respects

alike."  Id.  As a general rule, "legislatures are presumed to have acted within their

constitutional power despite the fact that, in practice, their laws result in some

inequality."  McGowan v. Maryland, 366 U.S. 420, 425-26 (1961).  Accordingly,

unless a classification warrants some sort of heightened review because it

jeopardizes the exercise of a fundamental right or categorizes on the basis of an

inherently suspect characteristic, the equal protection clause requires only that the

classification rationally further a legitimate government interest.  Nordlinger, 505

U.S. at 10.  In general, the Equal Protection Clause is satisfied so long as there is a

plausible policy reason for the classification, see United States Railroad Retirement

Bd. v. Fritz, 449 U.S. 166 (1980), the legislative facts on which the classification is

apparently based rationally may have been considered to be true by the

governmental decisionmaker, see Minnesota v. Clover Leaf Creamery Co., 449

U.S. 456, 464 (1981), and the relationship of the classification to its goal is not so

attenuated as to render the distinction arbitrary or irrational, see Cleburne v.

Cleburne Living Center, 473 U.S. at 446.  The rational relation test, however, will

not sustain conduct by state officials that is malicious, irrational, or plainly

arbitrary.  See Sinaloa, 882 F.2d at 1409.

Because Plaintiffs do not allege that residential developers are a class

warranting heightened scrutiny or that the Ordinance impacts fundamental rights,

rational basis review is appropriate for Plaintiffs' equal protection claim.  As a

result, the Ordinance need only bear some rational relation to a legitimate state

interest to survive Plaintiffs' challenge.  Lockary v. Kayfetz, 917 F.2d 1150, 1155

47

(9th Cir. 1990).  Here, however, County Defendants, as the moving party, bear the

burden of establishing that there is no genuine issue of material fact on Plaintiffs'

equal protection claim and, as a result, dismissal of this claim is appropriate as a

matter of law.  County Defendants again fall short of meeting this burden.

County Defendants' request for summary judgment on Plaintiffs'

equal protection argument is essentially premised upon a single theory: Plaintiffs'

must be asserting a "class of one" challenge.  In opposition, Plaintiffs assert that

they are not merely raising a "class of one" argument but, rather, a general equal

protection challenge to the Ordinance's arbitrary and irrational distinctions as they

apply to Plaintiffs and other residential developers.  These distinctions, Plaintiffs'

argument goes, are arbitrary because they discriminate against developers who are

actively solving the affordable housing crisis on Maui by introducing more housing

into the market, thus reducing prices.  Meanwhile, the Ordinance spares

commercial developers and others contributing to the housing problem from its

terms.

The Court agrees with Plaintiffs that this argument is a general equal

protection challenge and not a "class of one" claim.  Plaintiffs do not assert that the

Ordinance results in individualized, disparate treatment of their interests but,

rather, that the Ordinance effects arbitrary treatment of all residential developers

48

who fall under its ambit.  In premising their request for summary judgment

exclusively on a "class of one" theory, County Defendants do not provide any

argument that is germane to the immediate issue of whether there is a genuine issue

of fact as to Plaintiffs' broader equal protection challenge.  Accordingly, the Court

need not even apply the rational relation test here.  Plaintiffs' claim that the

Ordinance is arbitrary and irrational survives the instant Motion.

As to whether Plaintiffs additionally raise a "class of one" equal

protection claim, while Plaintiffs do not explicitly so argue, it appears nonetheless

that they do.  Specifically, with regard to their denied waiver appeal, Plaintiffs

contend that they were specifically and irrationally singled out for disparate

treatment.  Plaintiffs allege that the only evidence before the Council at the hearing

was that the Ordinance would not have the desired effect of increasing affordable

housing on Maui.  Despite this seeming disparity of proof, Plaintiffs' appeal was

denied, which at least raises an inference of differential treatment.  This inference

is furthered by on-the-record statements made by members of the Council at the

July 24, 2007 hearing.  For example, Councilmember Johnson stated that she was

"almost offended" that Plaintiffs did not concede that the construction of their

projects would require the importation of off-island workers and that Plaintiffs did

not address the issue.  (Minutes of July 24, 2007 Policy Comm. Mtg., Ex. 5 at 12,

attached to Pls.' Motion.)  Similarly, Councilmember Hokama commented that "we need to make a direction adjustment to provide for those who are living here and not for those that would like to come and move here."  (Id. at 10.)   In light of the foregoing, the Court agrees with County Defendants that Plaintiffs additionally bring a "class of one" equal protection challenge.

When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a "class of one" claim.  Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). In order to claim a violation in a class of one case, the plaintiff must establish that the government entity intentionally, and without rational basis, treated the plaintiff differently from others similarly situated.  Id.  A class of one plaintiff must show that the discriminatory treatment was "intentionally directed just at him, as opposed . . . to being an accident or a random act."  Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001).

While the Court agrees with County Defendants that Plaintiffs' equal protection claim includes, in relevant part, a "class of one" argument, the Court nonetheless finds that summary judgment is also not warranted on this issue. County Defendants contend that Plaintiffs' equal protection claim fails because the Ordinance applies equally to all developers who fall within the minimum

50

development categories.  Even if taken as true, this argument does not account for the evidence Plaintiffs set forth inferring disparate treatment during the July 24, 2007 hearing discussed above.  In short, the Court finds that there is a genuine issue of material fact as to whether Plaintiffs were intentionally, and without rational basis, treated differently from others similarly situated during their appeal for a waiver.  Olech, 528 U.S. at 564.

County Defendants' Motion is, therefore, DENIED with respect to Plaintiffs' equal protection claims.

C.  Due Process

County Defendants assert that summary judgment is appropriate as to Plaintiffs' substantive due process claim because the Ordinance is a valid inclusionary ordinance of the type that has withstood constitutional scrutiny in a number of other jurisdictions.  Moreover, County Defendants aver that Plaintiffs cannot establish that the Ordinance rises to the level of egregious official conduct or which "shocks the conscience," the applicable standards to due process challenges to governmental action.

Plaintiffs contend that the Ordinance's exactions for affordable housing as a condition of obtaining a building permit are arbitrary and unreasonable, thus violating due process.  The Council's arbitrary denial of

Plaintiffs' appeal furthered this violation.  Moreover, Plaintiffs argue that County

Defendants apply the incorrect standard to their due process claim in that the

"shocks the conscience" formula applies in situations of allegedly abusive

executive actions and not, as here, to a review of legislation.

      "The touchstone of due process is protection of the individual against

arbitrary action of government," Wolff v. McDonnell, 418 U.S. 539, 558 (1974),

whether the fault lies in a denial of fundamental procedural fairness, see, e.g.,

Fuentes v. Shevin, 407 U.S. 67, 82 (1972) (the procedural due process guarantee

protects against "arbitrary takings"), or in the exercise of power without any

reasonable justification in the service of a legitimate governmental objective, see,

e.g., Daniels v. Williams, 474 U.S. 327, 331 (1986) (the substantive due process

guarantee protects against government power arbitrarily and oppressively

exercised).  While due process protection in the substantive sense limits what the

government may do in both its legislative, see, e.g., Griswold v. Connecticut, 381

U.S. 479 (1965), and its executive capacities, see, e.g., Rochin v. California, 342

U.S. 165 (1952), criteria to identify what is fatally arbitrary differ depending on

whether it is legislation or a specific act of a governmental officer that is at issue.

County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

With regard to the latter, the cognizable level of executive abuse of power sufficient to constitute a violation of substantive due process is behavior that "shocks the conscience."  Id.  On the other hand, substantive due process provides a basis for overturning validly enacted legislation only if the legislation is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  Euclid, 272 U.S. at 395.

Before Lingle, the Ninth Circuit had held that the availability of the "substantially advances" test precluded a substantive due process claim based on arbitrary or unreasonable conduct in the land-use context.  Crown Point Dev., Inc. v. City of Sun Valley, 506 F.3d 851, 855 (9th Cir. 2007).  Now, in contrast, a "regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause."  Lingle, 544 U.S. at 542 (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); see Lingle, 544 U.S. at 549 (Kennedy, J. concurring) (noting that the Lingle decision "does not foreclose the possibility that a regulation might be so arbitrary and irrational as to violate due process").

For reasons previously discussed, the Court first finds County Defendants' contention that the Ordinance is valid based on a comparison with other jurisdictions wholly unpersuasive.  To reiterate, this argument says nothing

about whether the Ordinance at issue here is valid and, as a result, is an inadequate ground upon which to premise a motion for summary judgment.  Additionally, Plaintiffs are correct that County Defendants misapprehend the relevant standard for a due process challenge to legislation.  This standard is not, as County Defendants urge, whether the legislation "shocks the conscience."  As mentioned above, this standard applies in situations of allegedly abusive executive actions, such as police abuse cases.  See, e.g., Moreland v. Las Vegas, 159 F.3d 365, 372-73 (9th Cir. 1998).  Rather, a substantive due process challenge to legislation that neither utilizes a suspect classification nor draws distinctions implicating fundamental rights is reviewed pursuant to the "arbitrary and irrational" standard. Richardson v. City and County of Honolulu, 124 F.3d 1150, 1162 (9th Cir. 1997). County Defendants' reliance on the incorrect standard as a basis for the Motion on Plaintiffs' substantive due process claim renders their argument legally unsound. As such, County Defendants' Motion is DENIED as to Plaintiffs' substantive due process claim.

In conclusion, as noted at the June 2, 2008 hearing and based on the briefing thus far, there remain serious concerns about the constitutional viability of the Ordinance in light of the relevant due process and equal protection standards discussed above.

D.  <u>State Constitutional Claims</u>

County Defendants first argue that they are entitled to summary

judgment on Plaintiffs' State law claims because, except with respect to suspect

classifications, every enactment of the Hawai`i legislature is presumptively

constitutional and the party challenging the statute has the burden of showing that

the legislation is clearly, manifestly, and unmistakably unconstitutional.

Alternatively, County Defendants ask this Court to certify the issue to the Hawai`i

Supreme Court because there is a paucity of Hawai`i law as to whether an

ordinance, on its face, can constitute an unlawful taking.

Plaintiffs respond that County Defendants fail to provide a cogent

theory for summary judgment on the State law claims and, as such, the instant

Motion should be denied.  Moreover, County Defendants contend that County

Defendants lacked the authority to enact the Ordinance because imposition of a

development exaction for affordable housing by way of in lieu fees is not

authorized by State statute.  Lastly, Plaintiffs aver that Hawai`i law is sufficiently

clear on this issue and, therefore, there is no need to certify the issue to the Hawai`i

Supreme Court.

County Defendants fall well short of establishing that they are entitled

to summary judgment on Plaintiffs' State law claims.  In fact, the only substantive

argument County Defendants raise that arguably goes to the merits of the claim is

that the Ordinance carries a presumption of constitutional validity.  As the Court

has made clear, this argument does not even purport to address the specific claims

brought here and, resultingly, offers no guidance as to the actual constitutionality

of the Ordinance.  In sum, County Defendants have not proven that judgment as a

matter of law is warranted on Plaintiffs' State law claims.

As to certification, this Court finds such a remedy unwarranted.

County Defendants premise this request on an inaccurate distinction; specifically,

that Plaintiffs' State law claims are limited to facial takings claims.  On the

contrary, the Court's careful review of the FAC and Plaintiffs' opposition to the

Motion indicates that Plaintiffs' State law claims, while possibly incorporating

takings claims, are not so limited.  Plaintiffs argue, among other things, that the

Council lacked the authority to enact the Ordinance and, further, that the Ordinance

invalidly delegates the power to adjudicate waiver appeals to the Council.  As a

general rule, certified questions to a state supreme court are appropriate when a

federal court case involves an important question of state law that is both unclear

under state legal precedent and determinative in the immediate matter.  Pai `Ohana

v. U.S., 875 F. Supp. 680, 699 (D. Haw. 1995).  Here, it is uncertain whether

Plaintiffs' State law claims meet even one of these criteria, especially in light of the

overly narrow description imposed upon them by County Defendants' Motion.

County Defendants' request for certification to the Hawai`i Supreme Court on

Plaintiffs' State law claims is, therefore, DENIED.

    E.  <u>HRS §§ 46-141 to 46-148</u>[14]

       While unclear, it appears County Defendants assert that there is no

conflict between, nor preemption by, HRS §§ 46-141 to 46-148 as these statutes

relate to the Council's authority to enact the Ordinance.  County Defendants

additionally argue that, if this case is not dismissed, this Court should certify the

preemption question to the Hawai`i Supreme Court.

       Again, County Defendants make no substantive argument that would

warrant summary judgment on this issue.  Instead, County Defendants' argument

consists of a mere recitation of case law establishing when a conflict exists

between local legislation and state law.  Nowhere in County Defendants' Motion is

it established, or even argued, to what degree this law is pertinent to the instant

matter or, more significantly, why application of this law necessitates summary

---

[14] Plaintiffs' arguments on this issue are contained within their response to County Defendants' Motion on the State constitutional claims.  As summary judgment is not warranted on this issue for the reasons set forth below, there is no need for the Court to specifically address Plaintiffs' counter arguments.

judgment in County Defendants' favor.  Such unsupported argument falls well short of the summary judgment standard.

As to certification, the Court finds that there is no indication, in light of the significant constitutional issues raised in this suit, that the preemption question at issue here is dispositive.  Moreover, County Defendants have provided insufficient evidence to support a finding that this area of the law is unclear or undetermined.

F.  <u>Duplicative Claims</u>

Lastly, County Defendants argue that the individual Council members, Mayor Charmaine Tavares, and the Director of DHHC, all of whom are sued here in their official capacities, should be dismissed because Plaintiffs' claims are duplicative.  Plaintiffs do not oppose this portion of County Defendants' Motion.

Official capacity suits

'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the governmental entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.

Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978) (citations omitted)).  In light of this established standard, and because Plaintiffs offer no argument in opposition, the Court GRANTS County Defendants' Motion and DISMISSES the individual Council members, Mayor Tavares, and the Director of DHHC, Vanessa A. Medeiros, as defendants in this suit.

## CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' Motion and GRANTS IN PART and DENIES IN PART County Defendants' Motion. County Defendants' Motion is GRANTED as to Plaintiffs' implicit and explicit takings claims and DENIED as to Plaintiffs' other claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, July 3, 2008.



_____
David Alan Ezra
United States District Judge

Kamaole Pointe Development LP, et al. vs. County of Maui, et al., CV No.07-00447 DAE-LEK; ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT DECLARING ORDINANCE 3418 VOID ON ITS FACE UNDER THE DOCTRINE OF UNCONSTITUTIONAL CONDITIONS; AND ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT