IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| KAMAOLE POINTE DEVELOPMENT LP; ALAKU POINTE LP, | ) ) ) ) | CV. NO. 07-00447 DAE-LEK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| COUNTY OF MAUI, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT; AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On November 24, 2008, the Court heard Plaintiffs' and Defendants'

respective motions.  Robert G. Klein, Esq., and Dayna H. Kamimura-Ching, Esq.,

appeared at the hearing on behalf of Plaintiffs; Madelyn S. D'Enbeau, Deputy

Corporation Counsel, appeared at the hearing on behalf of Defendants.  After

reviewing the motions and the supporting and opposing memoranda, the Court

DENIES Plaintiffs Kamaole Pointe Development LP and Alaku Pointe LP's

Motion for Partial Summary Judgment (Doc. # 121) and GRANTS IN PART AND

DENIES IN PART Defendant's Motion for Summary Judgment (Doc. # 119).

BACKGROUND

In December 2006, the Maui County Council ("Council") passed Ordinance No. 3418, entitled the "Residential Workforce Housing Policy" (the "Ordinance"), which requires developers to dedicate forty to fifty percent of the total number of units or lots available in a residential development to affordable housing.  In lieu of providing actual units, the Ordinance provides that the developer may either: (1) pay an in-lieu fee at the rate of 30% of the total project sales; (2) donate unimproved land valued at 200% of the in-lieu fee; or (3) donate improved land valued at 100% of the in-lieu fee.

Plaintiffs are the owners of two parcels of land in Kīhei, Maui, on which they planned to construct two multi-family residential projects.  Prior to the passage of the Ordinance, Plaintiffs and their predecessors-in-interest invested hundreds of thousands of dollars into the planning and design of these projects.  After determining that complying with the Ordinance would render their projects economically infeasible, Plaintiffs appealed to the Council for a waiver from the Ordinance on February 23, 2007 pursuant to Section 2.96.030 of the Ordinance.  On July 24, 2007, the Council held a Policy Committee meeting at which Plaintiffs were invited to provide evidence that would justify a waiver.  On August 21, 2007, the Council rejected Plaintiffs' appeal, finding that there was a reasonable nexus

2

between the impact of Plaintiffs' proposed developments and the need for
affordable housing on Maui.

On August 23, 2007, Plaintiffs filed their Complaint, which was
subsequently amended on September 6, 2007 (the "First Amended Complaint" or
"FAC"), alleging that the Ordinance: (1) violates Plaintiffs' constitutional rights;
(2) effects an impermissible "taking" of property; (3) violates Plaintiffs'
substantive due process and equal protection rights; and (4) violates the Hawai`i
Constitution.  In addition, Plaintiffs contend that Defendants lacked authority to
enact the Ordinance and sought to enjoin its enforcement.

On February 28, 2008 and April 2, 2008, respectively, Plaintiffs and
Defendants filed motions for summary judgment.  In an order filed on July 3, 2008
(the "July 3, 2008 Order"), the Court denied Plaintiffs' motion on the basis that
Plaintiffs' "unconstitutional conditions" claim was in fact an unripe facial takings
claim.  Also in the July 3, 2008 Order, the Court granted in part and denied in part
Defendants' motion, granting the motion as to the unripe takings claims and
denying the motion as to Plaintiffs' equal protection and substantive due process
claims.  The Court additionally found summary judgment unwarranted on
Plaintiffs' State law claims and declined Defendants' request to certify these issues
to the Hawai`i Supreme Court.

3

On July 18, 2008, Defendants moved for reconsideration of the July 3, 2008 Order ("Motion for Reconsideration").  On September 9, 2008, the Court granted in part and denied in part the motion (the "September 9, 2008 Order"), clarifying that Defendants' motion for summary judgment was granted with respect to Plaintiffs' facial equal protection and facial due process claims, and denied with respect to Plaintiffs' as-applied equal protection and as-applied due process claims. The Court did not disturb its denial of summary judgment on the "class of one" claim.

On August 13, 2008, the parties filed cross motions for summary judgment.  Understandably, both motions reflected the earlier July 3, 2008 Order and were, thus, confusing in light of the decisions in the September 9, 2008 Order. At the September 29, 2008 hearing on the second set of cross motions for summary judgment, the Court denied the motions, without prejudice, as moot.  The Court then gave the parties leave to re-file dispositive motions with respect to any remaining claims.

On October 20, 2008, Defendants filed a Motion for Summary Judgment on the remaining claims. (Doc. # 119.)  Specifically, Defendants argued that (1) Plaintiffs' as-applied equal protection claim was not ripe and not factually supported, (2) Plaintiffs' as-applied "class of one" equal protection argument must

4

fail because there is no other entity similarly situated, (3) Plaintiffs' due process claims were not ripe and must fail because Plaintiffs do not have a protectable property interest in their proposed projects, (4) the Hawai`i constitutional claims must fail because there is a presumption of validity in validly enacted legislation, and (5) the Ordinance does not conflict with and is not preempted by Hawai`i state law.  Plaintiffs opposed the motion on October 30, 2008 (Doc. # 125) and Defendants replied on November 6, 2008 (Doc. # 130).

Likewise, Plaintiffs filed a Motion for Partial Summary Judgment on October 20, 2008.  (Doc. # 121.)  Plaintiffs argued (1) their substantive due process rights were violated, (2) their procedural due process rights were violated, and (3) the Ordinance violates the equal protection clause as-applied to Plaintiffs. Defendants filed an opposition on October 30, 2008 (Doc. # 127) and Plaintiffs replied on November 6, 2008 (Doc. # 129).

STANDARD OF REVIEW

I.    Motion for Summary Judgment

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't

5

of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198

F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to

dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett,

477 U.S. 317, 323-24 (1986).

     Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial -- usually,

but not always, the defendant -- has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of

material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d

626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

     Once the moving party has carried its burden under Rule 56, the

nonmoving party "must set forth specific facts showing that there is a genuine

issue for trial" and may not rely on the mere allegations in the pleadings.  Porter,

419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  In setting forth "specific facts," the nonmoving party may not meet its

burden on a summary judgment motion by making general references to evidence

without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885,

889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary

judgment, the court shall have no independent duty to search and consider any part

of the court record not otherwise referenced in the separate concise statements of

the parties."). "[A]t least some 'significant probative evidence'" must be

produced. T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine

issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with

"direct evidence" produced by the party opposing summary judgment, "the judge

must assume the truth of the evidence set forth by the nonmoving party with

respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence

and inferences must be construed in the light most favorable to the nonmoving

party. Porter, 419 F.3d at 891.  The court does not make credibility determinations

or weigh conflicting evidence at the summary judgment stage. Id.  However,

inferences may be drawn from underlying facts not in dispute, as well as from

disputed facts that the judge is required to resolve in favor of the nonmoving party.

T.W. Elec. Serv., 809 F.2d at 631.

II.     Challenges to Ripeness

Defendants argue in both their Motion for Summary Judgment as well as in opposition to Plaintiffs' Motion that Plaintiffs' as-applied equal protection and due process claims are not ripe for review. Because ripeness is a question of subject-matter jurisdiction, this Court will review Defendants' ripeness challenges as if they were brought in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). See St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

In a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the initial burden of proving that subject matter jurisdiction exists. Prescott v. United States, 973 F.2d 696, 701 (9th Cir. 1992). Upon a motion to dismiss pursuant to Rule 12(b)(1), a party may make a jurisdictional attack that is either facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack occurs when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. A factual attack occurs when the movant "disputes the truth of

the allegations, that by themselves, would otherwise invoke federal jurisdiction."

Id.

Where, as here, the movant makes a factual attack on jurisdiction, the court may review evidence beyond the complaint.  See Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  In resolving an attack on the facts, a court may weigh evidence to determine whether it has jurisdiction, as long as the jurisdictional facts are not intertwined with the merits.  Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987) (holding jurisdictional facts as to date of accrual of medical malpractice claim were intertwined with factual findings of onset of medical ailment).  In such circumstances,  "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Savage, 343 F.3d at 1039 n.2.

<u>DISCUSSION</u>

I.   <u>Ripeness</u>

At the outset, this Court addresses the threshold question of whether Plaintiffs' claims are ripe for review.  Defendants argue in both their Motion for Summary Judgment as well as in opposition to Plaintiffs' Motion that Plaintiffs' as-applied equal protection and due process claims are not ripe because Plaintiffs have failed to obtain a "final decision."  Plaintiffs claim, on the other hand, that the Council's denial of a waiver from the Ordinance constituted a final decision and their claims are therefore ripe.  Because this issue underlies the viability and scope of Plaintiffs' constitutional claims, this Court will address ripeness first.

The final decision requirement arises out of takings jurisprudence under the Fifth Amendment.  This Court has already outlined the relevant law on the final decision requirement in the takings context in the July 3, 2008 Order, in which this Court granted Defendants' Motion for Summary Judgment on Plaintiffs' takings claims as unripe.  In the interests of clarity, however, this Court will summarize the origins of the final decision requirement and its relevance to the as-applied challenges presented in this round of motions.

The Supreme Court has placed two hurdles in the way of a takings claim brought in federal court against states and their political subdivisions.

10

Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985).  First, a plaintiff must obtain a final decision regarding the application of the regulation to the property at issue before the government entity charged with its implementation. Id.  The reason for this requirement is that the complex factors involved in a takings claim "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." Id. at 190-91. Second, a plaintiff must seek compensation through the procedures provided by the state before turning to the federal courts. Id. at 194.

The Ninth Circuit has held that the first of these Williamson County ripeness requirements - that of a final decision - is applicable in as-applied substantive due process and equal protection claims brought to challenge the application of land use regulations. See Hoehne v. County of San Benito, 870 F.2d 529, 532 (9th Cir. 1989); Kinzli v. City of Santa Cruz, 818 F.2d 1449, 1455-56 (9th Cir.), as amended, 830 F.2d 968 (1987), cert. denied, 484 U.S. 1043 (1988); Shelter Creek Dev. Corp. v. City of Oxnard, 838 F.2d 375, 379 (9th Cir. 1988), cert. denied, 488 U.S. 851 (1988); Herrington v. County of Sonoma, 857 F.2d 567, 569 (9th Cir. 1988).  The Ninth Circuit has also held that the final decision requirement may likewise be applicable to related procedural due process claims.

11

Herrington, 857 F.2d at 570 (applying final decision requirement to procedural due process claim); Hoehne, 870 F.2d at 532; Kinzli, 818 F.2d at 1456 (no denial of procedural due process because substantive due process claim not ripe); Norco Constr., Inc. v. King County, 801 F.2d 1143, 1145 (9th Cir. 1986) (final decision requirement applicable to procedural due process claim for unlawful delay in processing development application); Traweek v. City of San Francisco, 920 F.2d 589, 593-94 (9th Cir. 1990) (ripeness requirement that applies to takings claims also applies to claims for denial of substantive due process, equal protection, and procedural due process).  Once again, the policy behind requiring a final decision before a court can adjudicate these constitutional claims is that "it is generally impossible to determine the extent of the infringement absent a final determination by the relevant governmental body."  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1404-05 (9th Cir. 1989), overruled on other grounds Armendiz v. Penman, 75 F.3d 1311, 1326 (9th Cir. 1996).

The Supreme Court has stated that a "final and determinative determination" under this ripeness doctrine must expose the "nature and extent of permitted development."  MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 350 (1986) (applying final decision requirement in takings context).  The Ninth Circuit has interpreted this to mean that a "final decision" requires at least

12

two decisions against the landowners: (1) a rejected development plan, <u>and</u> (2) a denial of a variance.  <u>See</u> <u>Kinzli</u>, 818 F.2d at 1454; <u>Herrington</u>, 857 F.2d at 579.

In <u>Kinzli</u>, for example, the Ninth Circuit applied the final decision requirement and ordered dismissal of takings, equal protection, and substantive due process claims.  In that case, the Santa Cruz City Council enacted a zoning ordinance which limited the uses available to greenbelt land.  <u>Kinzli</u>, 818 F.2d at 1452.  Owners of land within the zoning ordinance attempted to sell their property under a contract conditioned on city approval of residential development.  <u>Id.</u>  The potential purchaser filed an application for such approval, but abandoned it upon being informed that the city would not provide water services to the land.  <u>Id.</u>

Without submitting a follow-up request for a permit allowing any other use of the property, the landowners brought an action alleging that application of the ordinance constituted a taking, a denial of equal protection, and a denial of substantive due process.  <u>Id.</u>  The Ninth Circuit concluded none of the landowners claims were ripe for adjudication because they had not secured or even attempted to secure a decision on either the development plan itself or a variance from that plan.  <u>Id.</u> at 1453.  As a result, the Court concluded no final decision had been reached and, thus, the claims were unripe for adjudication.  <u>Id.</u>

In this case, there is no dispute that Plaintiffs brought an appeal to the County Council requesting a waiver from the strictures of the Ordinance.  The appeal for a waiver was denied.  It is also undisputed that Plaintiffs have not filed any formal application or submitted a development plan under the Ordinance.  Thus, while Plaintiffs may have received a sufficient denial of a variance in the form of the Council's waiver rejection, it is clear from the record that Plaintiffs have not received a final decision from the Council rejecting their development plan.  Under the final decision jurisprudence, Plaintiffs' as-applied due process and equal protection claims must fail because they are unripe.

Plaintiffs argue that the denial of the waiver itself constitutes a sufficiently final decision and that the Court has enough information about the Ordinance to rule on its constitutionality.  There is good reason, however, for the requirement of both a decision on the underlying development plan and a decision on any variance or waiver.  The motivation behind the final decision ripeness requirement is to provide the court with sufficient facts to determine how the regulation will be applied to the plaintiff.  See Shelter Creek, 838 F.2d at 378 ("courts are in no position to assess the constitutionality of the ordinance 'until a final decision is made as to how the regulations will be applied to [the landowner's] property.'") (citing Williamson County, 463 U.S. at 200).  Requiring

decisions on both the development plan and any variances therefrom informs the court "whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." Id.

Without a determination on the actual development plan, the court is left without sufficient facts to assess the Ordinance's constitutionality. Indeed, this Court cannot assess whether the Ordinance as-applied to the Plaintiffs violates their equal protection or due process rights when, in fact, the Ordinance has not yet been applied to the Plaintiffs. Although Plaintiffs point out there are a limited number of options under the Ordinance which the Council could choose to apply to Plaintiffs, it is not the prerogative of the Court to speculate as to which option the Council may choose. The final decision requirement is precisely designed to take this guess work out of the hands of the Court and place the burden on plaintiffs alleging constitutional violations to provide the Court with a final decision that may be properly evaluated.

Plaintiffs claim that they decided not to submit a Workforce Housing Agreement development plan to the Council because, after consulting with experts, Plaintiffs determined that any outcome under the Ordinance would be cost-prohibitive and Plaintiffs would be forced to operate at a loss. Considering

Defendants' statements that it intended to enforce the Ordinance as written, Plaintiffs assert that the waiver was the "only practical alternative" available.

Although not explicitly argued, it appears Plaintiffs are claiming that submission of a development plan would be a futile exercise.  It seems Plaintiffs are seeking refuge in an exception to the final decision requirement in which the requirement of submission of a development plan is excused if such application would be an "idle and futile act."  Kinzli, 818 F.2d at 1454 (quoting Martino v. Santa Clara Valley Water Dist., 703 F.2d 1141, 1446 n.2 (9th Cir. 1983), cert. denied 464 U.S. 847 (1983)).  Under this "futility exception," however, the plaintiff has a "heavy burden of showing that compliance with local ordinances would be futile."  Am. Sav. & Loan Ass'n v. County of Marin, 653 F.2d 364, 371 (9th Cir. 1981).

The precise test for whether the futility exception applies has not been clearly articulated.  See Kinzli, 818 F.2d at 1454.  Although it is unclear how many reapplications may trigger the exception, the Ninth Circuit in Kinzli stated that the exception is unavailable unless and until the landowner has submitted at least one "meaningful application" for development and one "meaningful application" for a

16

variance.[1] Id. at 1455 & n.6; accord Lake Nacimiento Ranch Co. v. County of San Luis Obispo, 830 F.2d 977, 980 (9th Cir. 1987).

In this case, once again, it is undisputed that Plaintiffs have failed to submit a Workforce Housing Agreement development plan of any kind to the Council under the Ordinance. Moreover, Plaintiffs' claims that the clear language of the Ordinance indicates that application would prove "economically infeasible" are irrelevant. The Kinzli Court explicitly rejected such economic-based iterations of the futility exception. Kinzli, 818 F.2d at 1454. The district court found that the futility exception applied to the landowners' claims because application would be futile if the ordinance "deprives plaintiffs of any beneficial use." Id. The district court then went on to apply what the Ninth Circuit deemed a "marketability" test for futility, in which the district court decided any application would have been

---

[1]This Court recognizes the inherent contradiction in having an exception to an application requirement require submission of applications. See Zilber v. Town of Moraga, 692 F. Supp. 1195, 1199 (N.D. Cal. 1988) (criticizing the logic of Kinzli's "meaningful application" test). Kinzli and its progeny, however, indicate that the "meaningful application" requirement that triggers the futility exception is designed to provide a forum for developers who have repeatedly submitted legitimate development plans to local agencies only to have them continuously delayed or denied. Moreover, this Court is bound by Ninth Circuit authority which has, in this area of law, repeatedly reinforced the "meaningful application" test. See Zilber, 692 F. Supp. at 1200 (acknowledging that "although this Court is less than comfortable with the Kinzli rule, it is well established in this circuit and therefore binding upon the Court").

futile because no plan could "satisfy the requirements of [the ordinance] and still . . . interest potential purchasers." Id.  The Ninth Circuit, however, explicitly rejected the beneficial use and marketability tests for determining the futility exception. Instead, the Court established the "meaningful application" test and has continued to apply that test to later cases.  See e.g., Lake Nacimiento, 830 F.2d at 980; Shelter Creek, 838 F2d at 379.  Plaintiffs' arguments as to the futility of submitting an application are thus unavailing as they failed to submit a meaningful application for a development plan to the Council.

Accordingly, Plaintiffs' as-applied substantive due process and equal protection claims brought to challenge the application of the land use Ordinance are unripe for review and are dismissed.  Specifically, this Court DISMISSES Plaintiffs' following claims:  (1) application of the Ordinance violates substantive due process because it is arbitrary, unreasonable, and not rationally related to a legitimate governmental purpose[2]; (2) the Ordinance violates general as-applied

---

[2]It was unclear from Plaintiffs' Motion for Partial Summary Judgment whether Plaintiffs were separately claiming that the denial of the waiver itself violated substantive due process.  (See Pl.'s Motion Section IV.A.b.)  In essence, Plaintiffs argued that the Council's finding of a nexus between the impact of their development and the number of workforce housing units was arbitrary and without basis.  To the extent that it was Plaintiffs' intention to put forth such an argument, this Court must nevertheless dismiss due to unripeness.  As stated above, the final decision requirement applies to as-applied substantive due process claims brought

(continued...)

equal protection principles because there is no rational relationship between the targeting of Plaintiffs and a legitimate government purpose.[3]

In addition, Plaintiffs' state constitutional substantive due process and equal protection claims are dismissed as unripe as well.  Although cases only apply the final decision requirement in the context of due process and equal protection challenges under the United States Constitution, ripeness is an issue of subject matter jurisdiction which limits the "cases or controversies" that a federal district court may properly hear.  See generally 5 C. Wright & A. Miller, Federal Practice

---

[2](...continued)
to challenge the application of land use regulations.  The question of whether a waiver should have been granted implicates the application of the Ordinance to the Plaintiffs.  In other words, in order to determine whether the Council's decision to deny the waiver was arbitrary under substantive due process analysis, this Court would need to analyze the language of the waiver provision, which specifically requires the absence of a nexus between "the impact of the development and the number of workforce housing units or in lieu fees/land required."  Plaintiffs have not, however, filed a development plan nor have they received a final decision on the "number of workforce housing units or in lieu fees/land required."  Therefore, this Court would have no way to evaluate the Council's decision.  This lack of evidence is precisely the situation envisioned by the "final decision" requirement and, thus, Plaintiffs' substantive due process claims, if any, concerning the waiver decision are not ripe.

[3]In spite of this Court's findings in its July 3, 2008 Order and Defendants' arguments to the contrary, Plaintiffs continue to argue that they are not asserting a violation of "class of one" equal protection.  This Court finds nevertheless that either articulation of the equal protection claim is dismissed as unripe according to the final decision rule.

& Procedure § 1350 (1969).  As such, it is not a question about the state or federal nature of the challenge but rather a question as to this Court's jurisdiction to review the challenge.  Since federal courts may only hear cases in which the issues are ripe, the state substantive due process and equal protection claims are dismissed as unripe as well under the final decision analysis.[4]  Id.

This Court does not, however, dismiss on ripeness grounds Plaintiffs' claim for violation of procedural due process.  The final decision requirement has been applied to procedural due process claims that were brought to challenge the application of land use regulations.  See Herrington, 857 F.2d at 570; Norco Constr., 801 F.2d at 1145.  In Herrington, for example, the Plaintiffs claimed their procedural due process rights had been violated because they were not given adequate notice or an opportunity to be heard in regards to several of the county's decisions about the application of the local ordinance to their land.  See Herrington, 834 F.2d at 1493.  Similarly, in Norco, the plaintiffs claimed their procedural due process rights had been violated because the county refused to act

_____

[4]It must be noted that Plaintiffs' articulation of the nature of their state constitutional claims was extremely weak.  A careful review of Plaintiffs' Opposition Motion reveals nothing more than broad assertions concerning the presumption of validity in duly enacted ordinances and comparisons with federal law.  Such arguments properly fall within a facial analysis of constitutional claims.  Nevertheless, to the extent that there are any state constitutional claims to assess, they are dismissed on ripeness grounds.

on their development application at all and caused unreasonable delay.  Norco, 801 F.2d at 1144.  In both cases, the Ninth Circuit approved use of the final decision analysis and in both cases the procedural due process claim concerned the manner in which the government agency applied the zoning ordinances to the plaintiffs' land.

In this case, however, Plaintiffs' procedural due process claim concerns the alleged lack of process employed by the Council in evaluating the appeal for a waiver.  The decision reached by the Council did not apply the strictures of the Ordinance to Plaintiffs' land.  The Council's decision on the waiver did not, for instance, require Plaintiffs to dedicate 50% of their land to affordable housing units or impose a 30% in-lieu fee.  As such, the waiver hearing process that resulted in the decision did not involve a "challenge to application of land use regulations" to the land.

Moreover, the policy concerns underlying the final decision requirement are not implicated by a determination on the merits of the procedural due process challenge to the waiver process.  There is sufficient evidence in the record to evaluate the legitimacy of the Council's waiver hearing and this Court need not await a development application by the Plaintiffs to assess the hearing's constitutionality.  (See Section II, infra.)  While this Court will not hear a

21

substantive due process claim regarding the arbitrariness of the decision reached by the Council (see footnote 2, supra), this Court is in a position to evaluate the method used by the Council to come to its decision.  Accordingly, this Court determines that Plaintiffs' procedural due process claim as to the legitimacy of the Council hearing is ripe for review and will be assessed according to the summary judgment standard of review.

II.  Plaintiffs' Motion for Partial Summary Judgment[5]

        In moving for partial summary judgment, Plaintiffs contend that the process by which the Council denied their waiver request violated procedural due process.  Namely, Plaintiffs argue that: (1) the Council members' motivations were purely political and evinced an irrational bias against residential developers which did not provide a neutral forum for adjudication of their claims; and (2) the appearance of due process was merely a "sham" as statements by Council members indicate that they had prior to the hearing decided to not grant any waivers.[6]

––––––––––––––––––––

        [5]Because Plaintiffs' other claims have been dismissed for want of subject-matter jurisdiction, this Court will only analyze the remaining procedural due process claim in its summary judgment review.

        [6]These arguments were gleaned from the procedural due process section of Plaintiffs' Motion (Section IV.A.2) as well as from the section on substantive due process (Section IV.A.1).  Despite having dismissed the substantive due process claim on ripeness grounds, this Court will read Plaintiffs' Motion as a whole in

                                                                                                (continued...)

22

To obtain relief on a procedural due process claim, the plaintiff must establish the existence of "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993) (brackets in original).  Thus, a threshold requirement to a procedural due process claim is the plaintiff's showing of "a liberty or property interest protected by the Constitution." Wedges/Ledges of Cal. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994) (citing Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972)).  "To have a property interest, a person clearly must have more than an abstract need or desire." Nunez v. City of Los Angeles, 147 F.3d 867, 872 (9th Cir. 1998).  "A mere 'unilateral expectation' of a benefit or privilege is insufficient; the plaintiff must 'have a legitimate claim of entitlement to it.'" Id. (quoting Roth, 408 U.S. at 577).

Protected property interests are not created by the Constitution, but by "existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005) (citing Roth, 408 U.S. at 577).  "A reasonable

---

[6](...continued)
order to give full consideration to the thrust of their procedural claims.

23

expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." Wedges/Ledges of Cal., 24 F.3d at 62 (internal quotation omitted); see also Town of Castle Rock v. Gonzales, 545 U.S. 748, 760 (2005) (noting that property interests arise only when the relevant state law provisions "truly ma[k]e [the conferral of the benefit] mandatory").

Plaintiffs claim they have a protectable property interest in obtaining a building permit.  However, Plaintiffs' citation to Parks v. Watson, 716 F.2d 646, 656-57 (9th Cir. 1983), does not support such a claim.  In Parks, the plaintiff claimed to have a property interest in his street vacation petition based on a state statute that required certain procedures for consideration of the petitions.  Id. While the Ninth Circuit did hold that state statutes providing for particular procedures may amount to entitlements protected by due process, the Court also held that such instances would be limited to when "the procedural requirements were intended to operate as a 'significant substantive restriction' on the agency's actions."  Id. at 657 (quoting Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir. 1980)).  In other words, when the statute commits the substance of decisions to the discretion of the agency, the procedural guarantees provided by the statute will "not enhance an applicant's expectation of obtaining a license to a degree sufficient to create a

24

protectable interest." Jacobson, 627 F.2d at 180 (holding that a property interest existed because once the procedural conditions were met, the city lacked discretionary powers).

In this case, the procedural language of the waiver provision leaves ample discretion to the Council and therefore Jacobson and Parks actually militate against a finding of a protectable property interest. The Ordinance provides that "[a] developer of any development subject to [the Ordinance] may appeal to the council for a reduction, adjustment, or waiver of the requirements based upon the absence of any reasonable relationship or nexus . . . ." (The Ordinance § 2.96.030.) No mandatory language exists in the Ordinance that demands a particular outcome; rather, the Council is given discretion to grant waivers in light of certain criteria. Accordingly, Plaintiffs are incorrect that the procedural language of the waiver provision presents an entitlement rising to the level of a protectable property right.

Plaintiffs properly assert, however, that their land use expectations constitute protected entitlements. The right of a landowner to devote his land to any legitimate use "is properly within the protection of the Constitution." See Harris v. County of Riverside, 904 F.2d 497, 503 (9th Cir. 1990) (quoting Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 121 (1928)). Plaintiffs, in applying for the waiver, were attempting to develop their land for the

25

legitimate use of residential housing.[7]  Plaintiffs therefore had a protectable

property interest in legitimate use of their land and the Council's denial of the

appeal for a waiver deprived Plaintiffs of that protected property interest.

Having found a deprivation of a protectable property interest, the next

step for this Court is to determine whether there was a constitutional lack of

process.[8]  The fundamental requirements of procedural due process are notice and

an opportunity to be heard before the government may deprive a person of a

protected liberty or property interest.  See Mathews v. Eldridge, 424 U.S. 319, 333

(1976).  Mathews applied a flexible standard of due process that weighs the

governmental against the private interests asserted.  Id. at 334-35.  At minimum,

however, Mathews requires that a party have an opportunity to be heard "at a

_____

[7]Defendants claim that Plaintiffs' use of land cannot be legitimate if it does not meet the provisions of the Ordinance.  However, that argument is circular.  Plaintiffs' use would only be illegitimate or illegal upon the Council's denial of the waiver.

[8]Defendants claim that Plaintiffs do not have standing to allege a deprivation of a protectable property interest because it was, in fact, Plaintiffs' predecessors-in-interest who applied for the waiver.  However, the developer identified in the appeal for a waiver was "Nokaoi Development, LP and its affiliates."  (See Pl.'s Ex. 4 at 1)(emphasis added).  Moreover, Defendants' pleadings have continued to acknowledge that the appeal was filed on Plaintiffs' behalf.  (See Defs.' Answer to FAC, Pl.'s Ex. 7 at ¶ 12 ("County Defendant admits Plaintiffs filed an appeal and request for waiver as to both projects . . ..").)  As such, Plaintiffs have standing to challenge the waiver proceeding on procedural due process grounds.

meaningful time and in a meaningful manner." Id. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 553 (1965)).

Plaintiffs do not dispute that they received adequate notice of the hearing and were allotted time in which to speak.  The crux of their argument rests instead on the idea that the hearing was at all times a sham and the Council members never intended to provide an opportunity to be heard "in a meaningful manner."  Id.  With respect to Plaintiffs' argument that the Council's actions exposed the hearing as a "sham," Plaintiffs are correct that there is probative evidence supporting an inference of bias on the part of some members of the Council.  (See Minutes of July 24, 2007 Policy Comm. Mtg., Pl.'s Ex. 5 at 11.) Council member Victorino's statements are particularly problematic.  During the hearing on Plaintiffs' waiver appeal, Council member Victorino stated: "So I think when someone comes in and asking for a waiver . . . they've gotta understand we're not gonna give waivers . . ..  We've talked about it.  We had a conference last week Friday on it, and we're not gonna change our mind." (Id.)  Such language indicates that the Council may not have given Plaintiffs legitimate, meaningful consideration in violation of their procedural due process rights.

Moreover, Plaintiffs highlight evidence that demonstrates bias against residential developers and controlling political motivations.  (See Pl.'s Ex. 13 at

27

113 (Member Mateo: "For too long, the developers have been running the . . . candy shop, enjoying the treats and sweets.  This [Ordinance] sends a direct notice that the candy shop is under new management and there will be change."); Ex. 14 at 36 (testifier commented on Council's perception that "developers are money driven and evil"), at 141 (Member Anderson: "I especially applaud Chairman Danny Mateo for having the guts and the bravery to stand strong despite all the bitching and moaning by those whose pockets are heavy with profits from Maui No Ka Oi.")).

Defendants, however, argue that the evidence demonstrates that Council members reviewed Plaintiffs' proposal and determined, after proper consideration, that a waiver was not warranted.  (Pl.'s Oct. 2008 CSOF, Ex. 5 at 12 (Member Johnson: "I read through their appeal, and frankly they don't talk about the number of units . . . Because even if you read through their rationale, if it's to be called a rationale, it makes no sense . . .."); Ex. 5 at 11 (Member Baisa: "I read what was available and I'm sorry that more was not available, but based on what I read, I was not convinced that we should give a waiver.")).

It is clear, then, that a genuine issue of material fact exists as to the nature and quality of the Council's consideration of Plaintiffs' waiver appeal.  The question of whether Plaintiffs' opportunity to be heard was "meaningful" is

28

complex, and requires credibility judgments that are more properly suited for a jury.  Accordingly, this Court DENIES Plaintiffs' Motion for Partial Summary Judgment and DENIES Defendants' Motion for Summary Judgment as to the procedural due process claim.

III. <u>Defendants' Motion for Summary Judgment</u>

Defendants assert that summary judgment is warranted on Plaintiffs' claim that the Council lacked statutory authority to enact the Ordinance because municipal corporations are forbidden from imposing impact fees, like the exactions and in-lieu fees mandated by the Ordinance, for affordable housing.  Defendants acknowledge that Hawaii Revised Statutes § 141 prohibits them from establishing affordable housing impact fees but argue that nothing in the statute prohibits them from conditioning the issuance of building permits and subdivision approval on affordable housing conditions.  Moreover, Defendants aver that there is no conflict between the Ordinance and Hawaii Revised Statutes §§ 46-141 to 46-148 and, as such, no question of whether the Ordinance is preempted by State law.  Finally, Defendants assert that if the Court is not inclined to grant summary judgment disposing of all of Plaintiffs' federal claims, the Court should certify the preemption question to the Hawai`i Supreme Court.  For the reasons set forth below, the Court finds that the Ordinance's in-lieu fee provision does not conflict

with State statute and, as a result, summary judgment is appropriate on this issue.

With no issue remaining as to preemption, Defendants' request for certification is

moot.

"Municipal corporations are solely the creation of the State.  As such

they may exercise only those powers which have been delegated to them by the

State legislature."  In re Application of Anamizu, 481 P.2d 116, 118 (Haw. 1971)

(internal citations omitted).  Haw. Rev. Stat. § 46-1.5 delegates to the counties the

power

> to enact ordinances deemed necessary to protect health,
> life, and property, and to preserve the order and security
> of the county and its inhabitants on any subject or matter
> not inconsistent with, or tending to defeat, the intent of
> any state statute where the statute does not disclose an
> express or implied intent that the statute be exclusive or
> uniform throughout the State[.]

Haw. Rev. Stat. § 46-1.5(13) (emphasis added).

Turning to the specific inquiry before the Court, § 46-142 provides

that counties may impose impact fees for any development not involving water

supply or service, but that these impact fees may be imposed only for those types

of public facility capital improvement projects specifically identified in a county

comprehensive plan or a facility needs assessment study.  Haw. Rev. Stat. § 46-

142.  As previously established, one option available to developers under the

Ordinance is to pay an in-lieu fee equal to 30% of the average projected sales price of the market rate dwelling units.  (The Ordinance § 2.96.040(B)(4)(a).)  Therefore, the pertinent questions facing this Court for purposes of determining whether a genuine issue of fact exists as to Plaintiffs' claim that the Ordinance was invalidly enacted are: (1) does the in-lieu fee provision of the Ordinance amount to an impact fee?; and, (2) if so, does this impact fee go towards public facility improvement projects identified in Maui's comprehensive plan or facility needs assessment study?  The Court answers the first question in the negative and, therefore, does not reach the second question.

Impact fees are "charges imposed upon a developer by a county or board to fund all or a portion of the public facility capital improvement costs required by the development from which it is collected, or to recoup the cost of existing public facility capital improvements made in anticipation of the needs of a development."  Haw. Rev. Stat. § 46-141.  The term "public facility capital improvement costs" means "costs of land acquisition, construction, planning and engineering, administration, and legal and financial consulting fees associated with construction, expansion, or improvement of a public facility."

31

On the other hand, the Ordinance specifies that the in-lieu fee "shall accrue to the affordable housing fund, which shall be established in the County budget for the purpose of enhancing and supporting housing needs and programs of income-qualified households and special housing target groups[.]" (The Ordinance § 2.96.040(B)(4)(a).)  Clearly, the Ordinance's assessment of a fee for a general affordable housing fund stands in marked contrast to payments made for the specific purpose of offsetting the cost of capital improvement projects directly attributable to a development.  Furthermore, "public facility capital improvement costs do not include expenditures for required affordable housing, routine and periodic maintenance, personnel, training, or other operating costs."  Haw. Rev. Stat. § 46-141 (emphasis added).  In light of this plain language, the Court finds that the Ordinance's in-lieu fee does not constitute an "impact fee" as defined by Hawaii Revised Statutes § 46-142 and, resultingly, the Ordinance does not conflict with State law.  In light of the foregoing, the Court GRANTS summary judgment to Defendants to the extent that Plaintiffs' preemption claim is premised on the "impact fees" argument.

As noted in Plaintiffs' opposition, however, Plaintiffs also allege in the FAC that the Ordinance invalidly delegates to the Council the power to

adjudicate appeals requesting a waiver.  The Maui County Charter, Plaintiffs

contend, properly vests this authority with the Board of Variances and Appeals.

Defendants set forth no argument or probative evidence addressing this component

of Plaintiffs' preemption claim.  As such, to the extent that Plaintiffs' preemption

claim is premised on this issue, summary judgment is not warranted.  The Court,

therefore, DENIES summary judgment with respect to this issue.

<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Plaintiffs' Motion for

Partial Summary Judgment AND GRANTS IN PART AND DENIES IN PART

Defendants' Motion for Summary Judgment.  Specifically, this Court (1)

DISMISSES Plaintiffs' as-applied substantive due process and equal protection

claims under both the United States and Hawaii constitutions as unripe, (2)

DENIES Plaintiffs' Motion for Partial Summary Judgment as to its as-applied

procedural due process claim, (3) DENIES Defendants' Motion for Summary

Judgment as to Plaintiffs' procedural due process claim, and (4) DENIES

Defendants' Motion for Summary Judgment on Plaintiffs' preemption claim under

Hawaii Revised Statutes §§ 46-141 to 46-148.


IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, November 25, 2008.


_____
David Alan Ezra
United States District Judge


Kamaole Pointe Development LP, et al. vs. County of Maui, et al., CV No.07-
00447 DAE-LEK; ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT; AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT